Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Brandon Brouillette (SBN 273156)
Brandon.Brouillette@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff Omar Zine*

Carney R. Shegerian (SBN 150461)
CShegerian@Shegerianlaw.com
Cheryl A. Kenner (SBN 305758)
CKenner@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone:    (310) 860-0770
Facsimile:    (310) 860-0771

*Attorneys for Plaintiff William Baber*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ZINE, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>NESPRESSO USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 3:20-cv-05144-SK<br>Consolidated with 3:21-cv-00487-JSC<br><br>Assigned to the Hon. Sallie Kim<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     December 12, 2022<br>Time:     9:30 a.m.<br>Place:    Courtroom C |

1    WILLIAM BABER, an individual, on behalf of
     himself and all others similarly situated and
2    aggrieved,

3              Plaintiff,

4         vs.

5    NESPRESSO USA, INC., a Delaware
     corporation; NESTLE USA, INC., a Delaware
6    corporation; and DOES 1 through 100, inclusive,

7              Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on December 12, 2022 at 9:30 a.m., or as soon thereafter as

3    counsel may be heard, in Courtroom C of the above-captioned court, located at 450 Golden Gate

4    Avenue, San Francisco, California 94102, the Honorable Sallie Kim presiding, Plaintiffs Omar Zine and

5    William Baber will, and hereby do, move this Court to:

6    1.    Preliminarily approve the settlement set forth in the Joint Stipulation of Class Action and

7    PAGA Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

8    2.    Conditionally certify the proposed Settlement Class;

9    3.    Appoint Omar Zine and William Baber as the representatives for the Settlement Class;

10   4.    Appoint Capstone Law APC and Shegerian & Associates, Inc. as Class Counsel;

11   5.    Approve distribution of the proposed Notice of Class Action Settlement to the

12   Settlement Class;

13   6.    Appoint CPT Group, Inc. as the Settlement Administrator; and

14   7.    Set a hearing date for final approval of the settlement.

15   This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of

16   Points and Authorities in support of Motion for Preliminary Approval of Class Action and PAGA

17   Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Cheryl A. Kenner; (5) the Joint

18   Stipulation of Class Action and PAGA Settlement and Release; (6) the Notice of Class Action

19   Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Class Action and PAGA

20   Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such other

21   documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of

22   this Motion.

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1

Dated: November 7, 2022                          Respectfully submitted,

2
                                      By:  /s/ Brandon Brouillette
3                                          Raul Perez
                                           Mark A. Ozzello
                                           Brandon Brouillette
4                                          Joseph Hakakian
                                           **CAPSTONE LAW APC**
5
                                           Carney R. Shegerian
6                                          Anthony Nguyen
                                           Cheryl A. Kenner
7                                          **SHEGERIAN & ASSOCIATES, INC.**

8                                          Attorneys for Plaintiffs Omar Zine and William
                                           Baber
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTS AND PROCEDURE ................................................................................2

    A.    Brief Overview of the Litigation ..............................................................2

    B.    The Parties Settled at Mediation..............................................................3

    C.    Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness. ...........4

    D.    The Proposed Settlement Fully Resolves Plaintiffs' Claims....................6

        1.    Composition of the Settlement Class ............................................6

        2.    Settlement Consideration...............................................................6

        3.    Formula for Calculating Payments from the Net Settlement Fund................6

        4.    Formula for Calculating Payments from the PAGA Fund .............7

        *5.*    Releases by Class Members and PAGA Members .........................7

        6.    The Settlement Selection Process .................................................8

III.  ARGUMENT ........................................................................................................8

    A.    Conditional Class Certification Is Appropriate for Settlement Purposes....................8

    B.    Plaintiffs' Claims Present Predominant Questions of Law and Fact. ......9

        1.    Common Questions of Law or Fact Predominate As to Plaintiffs' Minimum Wage Claim. ................10

        2.    Common Questions of Law or Fact Predominate As to Plaintiffs' Meal Period Claim. ...............11

        3.    Common Questions of Law or Fact Predominate As to Plaintiffs' Rest Period Claim. ...............13

        4.    Common Questions of Law and Fact Predominate As to Plaintiffs' Regular Rate Claim. ...............14

        5.    Common Questions of Law And Fact Predominate As to Plaintiffs' Business Expense Claim................15

6.    The Court Should Certify Plaintiffs' Derivative Claims................................................16

7.    Plaintiffs Will Adequately Represent the Interests of the Proposed Settlement Class...........................................................................................................................16

8.    Class Settlement Is Superior to Other Available Means of Resolution.........................17

9.    The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement.........................................................................................18

C.    The Proposed Class Action Settlement Should Receive Preliminary Approval....................19

D.    The Relief Provided by the Settlement is Fair and Reasonable...............................................20

1.    The Settlement Is the Product of a Thorough Investigation of the Factual and Legal Issues Implicated by Plaintiffs' Claims and Defendant's Defenses...................20

2.    The Gross Settlement Amount is Within the Range of Reasonableness........................21

3.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members. ..............................................................................................................26

4.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs. ..................................................................................................................27

E.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members..............................................................................................................28

F.    The Consideration Provided for the PAGA Claim Is Fair and Reasonable in Light of the Amount in Controversy Discounted by the Risks of Continued Litigation......................29

IV.    CONCLUSION...................................................................................................................................32

1
## TABLE OF AUTHORITIES

2

3     **S**TATE **C**ASES

4     *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001).....................................13

5     *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) .........................................................30

6     *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021) ...............................................27

7     *Bradley v. Networkers International, LLC*, 211 Cal. App. 4th 1129 (2012)........................................10, 11

8     *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012).................................................. 10, 12, 13

9     *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018)............................................................30

10    *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008).........................................................................28

11    *Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949 (2005) ....................................................12

12    *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) ........................................16

13    *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12,

14        2011)...............................................................................................................................................31

15    *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 220 (2013) .......................................................15

16    *Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021)..........................................................29

17    *Huntington Memorial Hospital v. Super. Ct.*, 131 Cal. App. 4th 893 (2005) ...................................14

18    *Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860 (2016) (*Laffitte I*)..............................28

19    *Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705 (2017).............................................................................29

20    *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ...............................................................27

21    *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000)...................................................................10

22    *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007) .......................................................12

23    *Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) ...................................................................31

24    *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999)...................................................................15

25    *Safeway, Inc. v. Superior Court of Los Angeles Cty.* (Esparza), 238 Cal. App. 4th 1138

26        (2015)......................................................................................................................................13, 14

27    *Sav-On  Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004).......................................................12

28    *Serrano v. Priest*, 20 Cal. 3d 25 (1977).............................................................................................27

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012)................................................30

*ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019)..................................................................................29


**FEDERAL CASES**

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035
(C.D. Cal. Dec. 30, 2013)........................................................................................................31

*Alonzo v. Maximus, Inc*., 275 F.R.D. 513 (C.D. Cal. 2011).................................................................9

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21,
2014)........................................................................................................................................23

*Bernstein v. Virgin Am., Inc*., 990 F.3d 1157 (9th Cir. 2021).........................................................29

*Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014
WL 4961182 (C.D. Cal., October 2, 2014)............................................................................30

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 (N.D. Cal Feb.
16, 2011) ................................................................................................................................31

*Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566 (9th Cir. 2004).................................................20

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) ......................................................15

*Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030 (N.D. Cal. 2016)...........................................................30

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 (E.D. Cal.
June 29, 2016) .......................................................................................................................31

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)...................................................16

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)............18

*Escano v. Kindred Healthcare Operating Co., Inc.*, No. 09-04778, 2013 U.S. Dist.
LEXIS 29899 (C.D. Cal. Mar. 5, 2013) ...............................................................................15

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047
(C.D. Cal. Aug. 12, 2011)......................................................................................................30

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989)......................................................................20

*Frlekin v. Apple Inc.*, 979 F.3d 639 (9th Cir. 2020).......................................................................11

1   *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575

2      (E.D. Cal. Oct. 31, 2012)...................................................................................................... 31

3   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................................17, 20

4   *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.

5      Cal. Apr. 3, 2009)................................................................................................................ 31

6   *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979)....................... 23

7   *In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ...................................................... 9

8   *In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) ............................ 23

9   *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ....................... 22

10  *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .................. 22

11  *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D.

12     Pa. 2014) ............................................................................................................................ 20

13  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................ 23

14  *In re Tableware Antitrust Litig.,* 484. F. Supp. 2d 1078 (N.D. Cal. 2007)........................ 20

15  *In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219 (E.D. Cal. 2012)......... 9

16  *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002)............................ 23

17  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ......................................... 9

18  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013)................................................. 9

19  *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D.

20     Cal. June 15, 2012) ............................................................................................................ 31

21  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ...................................... 21

22  *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ....................... 27

23  *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007) ......................................... 27

24  *Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 ((S.D. Cal.

25     Aug. 4, 2016)...................................................................................................................... 20

26  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)................... 22

27  *Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ................................................................. 21

28  *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003) ................................................ 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..............................21

*Richie v. Blue Shield of California*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal.
    Dec. 9, 2014) ......................................................................................................................15

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ...............................................21

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ......................20

*Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP
    (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ......................................................30

*Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998 (C.D. Cal.
    June 10, 2019) ....................................................................................................................30

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................27

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) .........................................................9

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ....................................17

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ....................................9

## STATE STATUTES

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) .................................16

Cal. Lab. Code § 201 ............................................................................................................16

Cal. Lab. Code § 202 ............................................................................................................16

Cal. Lab. Code § 203 ............................................................................................................16

Cal. Lab. Code § 204 ............................................................................................................16

Cal. Lab. Code § 226.7(b) .....................................................................................................12

Cal. Lab. Code § 510 ............................................................................................................16

Cal. Lab. Code § 512(a) ........................................................................................................11

Cal. Lab. Code § 558 ............................................................................................................29

Cal. Lab. Code § 1194 ..........................................................................................................16

Cal. Lab. Code § 1197 ..........................................................................................................16

Cal. Lab. Code § 1197.1 ........................................................................................................16

Cal. Lab. Code § 1198 ..........................................................................................................16

Cal. Lab. Code § 2699(h)......................................................................................... 30

**FEDERAL STATUTES**

8 Cal. Code of Reg. § 11070(2)(G) ......................................................................... 10

8 Cal. Code of Reg. § 11070(4)(B)........................................................................... 10

Fed. R. Civ. P. 23..................................................................................................... 18

Fed. R. Civ. P. 23(a) ........................................................................................9, 16, 17

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 9

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 17

Fed. R. Civ. P. 23(b) ................................................................................................. 9

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 9

Fed. R. Civ. P. 23(c)(2) ......................................................................................18, 19

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................... 19

**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................ 20

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of
    Empirical Legal Studies, Vol. 1, Issue 1 (March 2004)..................................... 28

*Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2004) ..................18, 19

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) .....................18, 19

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before
    Trial, California & 9th Cir. Editions (The Rutter Group, 2015) ........................ 27

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3

Plaintiffs Omar Zine and William Baber (collectively "Plaintiffs") seek preliminary approval of

4

the Joint Stipulation of Class Action and PAGA Settlement and Release,[1] which if approved, would

5

provide considerable monetary relief for approximately 600 current and former employees of Defendant

6

Nespresso USA, Inc. ("Defendant" or "Nespresso") (collectively with Plaintiffs, the "Parties"). The

7

principal terms of the Settlement provide for the following:

8

(1)    Conditional certification of a Settlement Class defined as: All persons employed in

9

California by Defendant as non-exempt employees at any time during the period from

10

June 3, 2016 through January 4, 2022 ("Class Members").

11

(2)    A **non-reversionary** Gross Settlement Amount of $950,000. The Gross Settlement

12

Amount includes:

13

(a)    A Net Settlement Fund of $483,333 (the Gross Settlement Amount minus the

14

requested Attorneys' Fees and Costs, Settlement Administration Costs, the

15

$80,000 PAGA settlement, and the Class Representative Enhancement

16

Payments), which will be allocated to all Class Members on a pro-rata basis

17

according to the number of weeks each Class Member worked during the Class

18

Period. **The Entire Net Settlement Fund will be paid to all Class Members**

19

**who do not opt out of the Settlement Class, and without the need to submit**

20

**claims for payment.**

21

(b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or

22

$316,667), and litigation costs and expenses not to exceed $40,000, to Capstone

23

Law APC and Shegerian & Associates, Inc. ("Plaintiffs' Counsel").

24

(c)    Settlement administration costs of approximately $10,000, to be paid to the

25

jointly selected Settlement Administrator, CPT Group, Inc.

26

(d)    A $80,000 PAGA settlement, of which 75% ($60,000) will be paid to the Labor

27

28

[1] Hereinafter "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

& Workforce Development Agency ("LWDA"), and the remaining 25% ($20,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons employed in California by Defendant as non-exempt employees at any time during the period from March 6, 2019 through January 4, 2022. **The Entire PAGA Fund will be paid to all PAGA Members, and without the need to submit claims for payment.**

(e)    Class Representative Enhancement Payments of $5,000, each, to Omar Zine and William Baber for their service on behalf of the Settlement Class, and General Release Payments of $5,000, each, for general releases of all claims arising out of their employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Jeffrey Krivis, Esq., an experienced and respected mediator of wage and hour actions, and the Settlement confers substantial benefits to Class Members. This relief— averaging approximately $800 per Class Member from the Net Settlement Fund—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiffs prevailing at trial but losing on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under California law and falls within the range of reasonableness. Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

Nespresso is a Delaware corporation that produces and distributes some of the world's most well-known food brands, including Nescafe, Gerber, and Carnation. Nespresso operates at least 9 retail locations in California in which it sells its coffee makers and related merchandise.

Plaintiff Zine worked for Nespresso in California as an hourly paid, non-exempt Specialist

1    Boutique Coffee from approximately December 2015 to February 2019. (*See* Dkt. No. 24, Second

2    Amended Complaint ["SAC"] ¶ 4.) His primary job duties included performing product demonstrations,

3    providing customer service, opening and closing the store, and stocking merchandise. (*Id.*)

4        Plaintiff Baber worked for Nespresso in California as an hourly-paid, non-exempt retail sales

5    specialist from approximately August 20, 2017 through approximately January 31, 2020. (Declaration of

6    Cheryl A. Kenner ["Kenner Decl."] ¶ 3.) His job duties included stocking merchandise; selling

7    merchandise; inventorying, organizing, packing and unpacking merchandise; cashiering; answering

8    phones; assisting customers; janitorial tasks for the store and restrooms; providing food and drinks to

9    customers; washing dishes; setting up deliveries of merchandise to customers; fulfilling orders to be

10    shipped to customers who placed orders online or else picked up in-store; and performing general

11    opening/closing duties.

12        On June 25, 2020, Plaintiff Zine filed his class action complaint against Nespresso in Contra

13    Costa County (Case No. C20-01185). (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) On July 27, 2020,

14    Defendant removed this case to the Northern District of California. (*Id.*) Plaintiff Zine's operative SAC

15    alleges that Defendant failed to pay overtime, minimum wages, provide compliant meal periods and rest

16    periods, provide compliant wage statements, provide timely wages upon termination, failure to pay

17    vested vacation time and paid time off upon termination, and unreimbursed business expenses. (*Id.*)

18        On June 3, 2020, Plaintiff William Baber filed his own class action and PAGA Representative

19    action complaint alleging the same or substantially overlapping causes of action with a similar class

20    definition as the Zine case. (Kenner Decl. ¶ 4.) On September 15, 2020, Plaintiff Baber filed a first

21    amended complaint. (*Id.*) On January 7, 2021, Plaintiff Baber transferred his case from the Central

22    District of California to consolidate it with Plaintiff Zine's action. (*Id.* at ¶ 5.)

23    **B.    The Parties Settled at Mediation.**

24        On October 4, 2021, the Parties participated in a mediation with Jeffrey Krivis, Esq., an

25    experienced mediator of wage and hour class actions. (Perez Decl. ¶ 3.) Mr. Krivis helped to manage the

26    Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*)

27    With Mr. Krivis's guidance, the Parties were eventually able to negotiate a complete settlement of

28    Plaintiffs' claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the

1    Joint Stipulation of Class Action and PAGA Settlement and Release. (*Id.*, Ex. 1.) At all times, the

2    Parties' negotiations were adversarial and non-collusive. (*Id.*) The Settlement therefore constitutes a fair,

3    adequate, and reasonable compromise of the claims at issue. (*Id.*)

4        **C.    Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal**

5             **Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness.**

6        Plaintiffs' Counsel's evaluation of the settlement's reasonableness was informed by their

7    thorough investigation into Plaintiffs' claims and Defendant's defenses, and their review of the

8    considerable discovery produced by Defendant during the matter's pendency. (Perez Decl. ¶ 4; Kenner

9    Decl. ¶ 10.)

10       Prior to filing their respective actions, Plaintiffs contacted Plaintiffs' Counsel to discuss the

11   factual bases for pursuing their actions against Defendant for Labor Code violations. (Perez Decl. ¶ 5;

12   Kenner Decl. ¶ 10.) Plaintiffs were intimately familiar with Defendant's labor policies and practices, and

13   over the course of multiple interviews, knowledgeably summarized those policies and practices to

14   Plaintiffs' Counsel. (Perez Decl. ¶ 5; Kenner Decl. ¶ 6.) During those conversations, they explained how

15   the policies and practices were instituted and provided valuable insight into how they gave rise to the

16   alleged Labor Code violations. (Perez Decl. ¶ 5; Kenner Decl. ¶ 6.) Based on these interviews with

17   Plaintiffs, Plaintiffs' Counsel determined that there were legally sufficient grounds for pursuing an action

18   against Defendant. (Perez Decl. ¶ 5; Kenner Decl. ¶¶ 6–7,10.)

19       In preparation for drafting the Complaints, Plaintiffs' Counsel conducted their own preliminary

20   investigation into the factual bases for Plaintiffs' claims, which entailed, *inter alia*, a careful examination

21   of Plaintiffs' personnel files and associated records. (Perez Decl. ¶ 6; Kenner Decl. ¶ 10.) Following the

22   filing of Plaintiffs' respective actions, and in response to their formal and informal discovery requests,

23   Plaintiffs' Counsel received a considerable amount of documents and data, including employee

24   demographic data, putative class members' contact information, a sample of time and pay records, and

25   Defendant's labor policies and procedures manuals which covered a broad range of topics including,

26   *inter alia*, employee clock-in policies and procedures, attendance policies, meal periods/rest periods,

27   overtime & premium pay, etc. (Perez Decl. ¶ 6; Kenner Decl. ¶ 11.) The document and data exchanges

28   allowed Plaintiffs' Counsel to fully assess the nature and magnitude of the claims being settled, as well

as the impediments to recovery, and ultimately enabled Plaintiffs' Counsel so as to make an independent assessment of the reasonableness of the settlement's terms. (Perez Decl. ¶ 6; Kenner Decl. ¶ 12.)

Following the production of the Class Members' contact information, Plaintiffs' Counsel also interviewed numerous Class Members to determine the extent and frequency of the alleged Labor Code violations and to learn more about the day-to-day circumstances giving rise to the alleged violations. (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.) These Class Members worked in both stand-alone Nespresso boutiques, and Bloomingdales locations during the entire class period from 2017 through 2021. (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.) Geographically, these Class Members worked in all relevant regions; i.e., Northern and Southern California. (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.) The Class Members interviewed held the following positions: greeter, sales associate, coffee specialist, barista, boutique specialist, manager in-training, in-house trainer, team lead, shift lead, assistant manager, and chef. (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.)

In summary, Plaintiffs' Counsel performed a thorough investigation into the claims at issue, which included: (1) determining Plaintiffs' suitability as private attorneys general and class representatives through interviews, background investigations, and analyses of their employment files and related records; (2) evaluating all of Plaintiffs' potential representative claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing a sample of employees' time and wage records; (5) reviewing Defendant's labor policies and procedures manuals; (6) interviewing Class Members; (7) researching settlements in similar cases; (8) evaluating Plaintiffs' claims and estimating Defendant's liability for purposes of settlement; (9) drafting the mediation brief; and (10) participating in the mediation. (Perez Decl. ¶ 8; Kenner Decl. ¶ 10.)

By engaging in such a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, and various defenses asserted by Defendant. (Perez Decl. ¶ 9; Kenner Decl. ¶ 14.)

1

**D.    The Proposed Settlement Fully Resolves Plaintiffs' Claims**

2

**1.    Composition of the Settlement Class**

3    The proposed Settlement Class consists of all persons employed in California by Defendant as

4    non-exempt employees at any time during the period from June 3, 2016 through January 4, 2022.

5    (Settlement Agreement ¶ 5.) There are approximately 600 Class Members. (*Id.* at ¶ 31.)

6

**2.    Settlement Consideration**

7    Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for the

8    Gross Settlement Amount of $950,000. The Gross Settlement Amount includes: (1) automatic payments

9    to all Participating Class Members—meaning, all Class Members except those who submit timely and

10    valid Requests for Exclusion—from the Net Settlement Fund; (2) $316,667 in attorneys' fees (i.e., one-

11    third of the common fund) and up to $40,000 in litigation costs to Plaintiffs' Counsel; (3) Settlement

12    Administration Costs of approximately $10,000; (4) a $60,000 payment to the LWDA and a $20,000

13    payment to PAGA Members; and (5) Class Representative Enhancement Payments of $5,000, each, for

14    Plaintiffs' service on behalf of the Settlement Class, and General Release Payments of $5,000, each, for

15    general releases of all claims arising out of their employment with Defendant. (Settlement Agreement ¶¶

16    34-39.)

17    Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, the

18    payment to the LWDA, and the Class Representative Enhancement Payments, the Net Settlement Fund

19    will be distributed to Participating Class Members in full. (Settlement Agreement ¶ 40.)

20

**3.    Formula for Calculating Payments from the Net Settlement Fund**

21    Each Class Member's share of the Net Settlement Fund will be proportional to the number of

22    weeks he or she worked during the Class Period. (Settlement Agreement ¶ 42.)

23    Given that there are approximately 600 Class Members, the average net recovery will be

24    approximately $800. This average net recovery is significantly greater than many other wage and hour

25    class action settlements approved by California state and federal courts. *See*, *e.g.*, *Sandoval v. Nissho of*

26    *Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of

27    approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net

28    recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A.

County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal.) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal.) (average net recovery of approximately $50); and *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80).

### 4. Formula for Calculating Payments from the PAGA Fund

Each PAGA Member's share of the PAGA Fund will be proportional to the number of weeks he or she worked during the PAGA Period. (Settlement Agreement ¶ 42(b).)

### 5. Releases by Class Members and PAGA Members

In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class Members will agree to release the Released Class Claims during the Class Period:

> All claims asserted in the Actions, reasonably arising from or related to the facts and claims alleged in the Actions, or that reasonably could have been raised in the Actions based on the facts and claims alleged in the operative civil complaints for each Action and all amendments thereto, including all claims for unpaid wages, minimum wage, overtime compensation, double-time compensation, and interest; the calculation of the regular rate of pay for overtime or for any purpose; meal period and rest-period premiums, including failure to pay premiums at the regular rate of compensation; reimbursement for all necessary business expenses; payment for all time spent in connection with security checks and all hours worked, including off-the-clock and unrecorded work; failure to pay vacation and paid time off upon termination; failure to provide accurate and timely wage statements; unfair business practices; penalties, including, but not be limited to, civil penalties, statutory penalties, recordkeeping penalties, and waiting-time penalties; and attorneys' fees and costs; all claims related to the Released Claims arising under: the California Labor Code (including, but not limited to, sections 200, 201, 202, 203, 204, 210, 218.5, 226, 226.3, 226.7, 227.3, 500, 510, 512, 516, 558, 558.1, 1174, 1174.5, 1182.12, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2800, and 2802), the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, et seq. This release excludes the release of claims not permitted by law.

(Settlement Agreement ¶¶ 26, 55.)

And in exchange for the PAGA Settlement Amount, Plaintiffs and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period:

> All claims asserted through California Labor Code §§ 2698, et seq., that reasonably arise out of, or are related to, the Released Class Claims during the PAGA Period.

(Settlement Agreement ¶¶ 27, 56.)

### 6.    The Settlement Selection Process

Plaintiffs obtained bids from several administrators. (*See* Perez Decl. ¶ 18, Ex. 2-5.) All administrators were given the same notice parameters and provided bids as follows:

| Administrator | Bid Amount |
|---|---|
| CPT Group, Inc. ("CPT") | $10,000.00 |
| Phoenix Class Action Administrators | $10,000.00 |
| Rust Consulting, Inc. | $13,903.00 |
| KCC | $34,891.00 |

Subject to Court approval, CPT has been selected to administer the settlement. For their part, Plaintiffs' Counsel have worked with CPT on multiple occasions over the past year, including: *Arellano v. R&B Sales and Marketing, Inc.*, No. 20STCV04112 (Los Angeles County Superior Court); *Limon v. Crestline Hotels & Resorts, LLC*, No. 20STCV37266 (Los Angeles County Superior Court); *Trento v. U.S. Security Associates, Inc.*, No. RG18932522 (Alameda County Superior Court); *Saldana v. Hydrochem LLC*, No. MSC19-02624 (Contra Costa County Superior Court); *Portillo v. AJR Trucking, Inc.*, No. 19STCV15591 (Los Angeles County Superior Court); *Guth v. The Green Goddess, Inc.*, No. 20STCV12952 (Los Angeles County Superior Court); *Aguilar v. Santa Rosa Berry Farms, LLC*, No. 56-2019-00525899-CU-OE-VTA (Ventura County Superior Court); *Rios v. ESHU Enterprises, Inc. dba Popeyes Chicken*, No. 20STCV35422 (Los Angeles County Superior Court); *Hernandez v. CTC Global Corporation dba CTC Cable Corp.*, No. 30-2020-01138945-CU-OE-CJC (Orange County Superior Court). (Perez Decl. ¶ 19; Kenner Decl. ¶ 16.)

## III.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes.

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure

1  23(a),[2] and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v.*

2  *Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at

3  issue, "the key question for class certification is whether there is a consistent employer practice [or

4  policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399

5  (C.D. Cal. 2008). Class certification is proper when the plaintiff provides substantial evidence of a

6  company-wide policy on which her theory of liability is based, even if in practice that policy's

7  implementation varied. *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist.

8  LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was

9  undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways")

10  (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

11      Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the

12  theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 525 (C.D. Cal.

13  2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the

14  [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

15  350, 359, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a

16  defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar*

17  to certification. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of

18  individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

19      **B.    Plaintiffs' Claims Present Predominant Questions of Law and Fact.**

20      For a class to be certified, there must be questions of law or fact common to the class. Fed. R.

21  Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over

22  any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3)

23  predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).

24  Here, each of Plaintiffs' theories of liability presents common legal and factual questions that

25  predominate over any individual issues.

26

27      [2] Rule 23(a) provides that, to certify a class, Plaintiffs must demonstrate that "(1) the class is so
    numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to
28  the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of
    the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

1                  **1.**        **Common Questions of Law or Fact Predominate As to Plaintiffs'**

2                         **Minimum Wage Claim.**

3         Plaintiffs allege that Nespresso maintains a uniform loss prevention policy that requires all

4 employees to undergo security checks (whether at the end of their shifts or during meal and rest breaks)

5 before leaving the premises. All of time spent waiting for the search and exit was allegedly off-the-clock

6 work.

7         Defendant's alleged requirement that all employees pass through security checks after clocking

8 out subjects employees to off-the-clock, uncompensated work time in violation of California law.

9 Pursuant to IWC Wage Order No. 7, "[e]very employer shall pay to each employee, on the established

10 payday for the period involved, not less than the applicable minimum wage for all hours worked in the

11 payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." 8 Cal.

12 Code Reg. § 11070, subd. 4(B). "Hours worked" means "the time during which an employee is subject

13 to the control of an employer, and includes all the time the employee is suffered or permitted to work,

14 whether or not required to do so." *Id.* at subd. 2(G).  Further, "[u]nder California law it is only necessary

15 that the worker be subject to the 'control of the employer' in order to be entitled to compensation."

16 *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) (adopting the DLSE interpretation of "hours

17 worked" (internal quotations and citations omitted)).

18         Whether presented as an affirmative policy requiring the security checks to be performed off-

19 the-clock and without pay, or as a lack of policy requiring the time involved to be compensated, the off-

20 the-clock security check claim is suitable for class treatment. Where, "[t]he [plaintiff's] theory of liability

21 is that the defendant has a uniform policy, and that that policy, measured against wage order

22 requirements, allegedly violates the law—[that theory of liability] is by its nature a common question

23 eminently suited for class treatment." *Brinker Rest. Corp v. Super. Ct.*, 53 Cal. 4th 1004, 1033-34 (2012).

24 Likewise, the absence of a policy can create the basis for a class-wide violation. *See Bradley v.*

25 *Networkers International, LLC*, 211 Cal. App. 4th 1129 (2012) as modified on denial of reh'g (Jan. 8,

26 2013) (there is no material distinction between an express non-compliant meal and rest break policy and

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
3:20-cv-05144-SK

1   the *lack* of one).[3] *Id.* at 1149-50. Either way, "the employer engaged in uniform companywide conduct

2   that allegedly violated state law." *Id.* at 1150; *see also Faulkinbury*, 216 Cal. App. 4th at 237 (holding the

3   lack of a rest break policy could be determined on a class-wide basis because "lack of a meal/rest break

4   policy and the uniform failure to authorize such breaks are matters of common proof").

5   Claims involving unpaid wages due to off-the-clock security checks are readily certifiable

6   because they inherently implicate common questions of law and fact. The Northern District of California

7   *certified* a class based on a uniform bag search policy in *Frlekin v. Apple Inc.*, 309 F.R.D. 518 (N.D. Cal.

8   2015) (now instructed to grant summary judgment in favor of the employees in *Frlekin v. Apple Inc.*,

9   979 F.3d 639 (9th Cir. 2020)). Apple instituted a written policy for a manager to search all employee

10  packages and bags for stolen goods whenever an employee left the store with a package or bag. *Frlekin*,

11  309 F.R.D. at 520. As here, the bag checks were conducted off-the-clock and, even though employees

12  could avoid the bag check by not bringing a bag to work, the district court found that their

13  compensability raised predominant common issues of fact and law. *Id.* at 523-26.[4]

14          **2.      Common Questions of Law or Fact Predominate As to Plaintiffs' Meal**

15                  **Period Claim.**

16          "An employer may not employ an employee for a work period of more than five hours per day

17  without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code §

18  512(a). Additionally, an employee may not work more than 10 hours without being provided a second

19

20          [3] The applicable IWC wage order requires employers to provide meal breaks and to authorize
21  and permit rest breaks for their employees, the number and timing of which depends on the length of the
    employees' shifts. *See Bradley*, 211 Cal. App. 4th at 1149.
            [4] On the merits of the class claims in *Frlekin*, the district court initially granted summary
22  judgment in favor of Apple, the class appealed, and the Ninth Circuit certified a question to the
    California Supreme Court: "Is time spent on the employer's premises waiting for, and undergoing,
23  required exit searches of packages, bags, or personal technology devices voluntarily brought to work
    purely for personal convenience by employees compensable as 'hours worked' within the meaning of
24  Wage Order 7?" *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1042 (2020) as modified on denial of reh'g (Aug.
    29, 2018) (ruling on a certified question by the Ninth Circuit Court).  The California Supreme Court
25  answered, "yes." *Id.*  The court reasoned, through Apple's class-wide policy, Apple controlled
    employees during the bag check process by requiring compliance (under threat of discipline including
26  termination), confining employees to the premises while waiting for and undergoing the search, and
    compelling employees to perform specific and supervised tasks (under orders of the manager or security
27  personnel) as part of the search process. *Id.* at 1047.  Accordingly, the court held that the bag check time
    and associated waiting time must be compensated for the certified class. *Id.* at 1056-57.
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

3:20-cv-05144-SK

meal period. *Id.* Where an employee does not receive a timely meal period of at least 30 minutes, the employer is required to pay the employee one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b).

Plaintiffs allege that Nespresso maintained a uniform, consistently applied practice of tight labor budgeting that resulted in chronic understaffing such that there were too few employees on duty to handle the heavy workload and heavy volumes of customers to provide uninterrupted meal period coverage. Due to alleged understaffing (lack of coverage, call-outs, rushes), employees were also allegedly regularly unable to take their meal periods within the fifth hour and had their meal periods interrupted.

It is well-settled that an employer is liable for failing to provide meal periods if the employer in any way discouraged employees from taking their required meal periods. As the California Supreme Court held in *Brinker, Ct.*, 53 Cal. 4th at 1040:

> An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. [7] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and **does not impede or discourage them from doing so.**

(emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949, 962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) ("An employee forced to forgo his or her meal period ... loses a benefit to which the law entitles him or her.")

Plaintiffs contend that their meal period claim under this theory is readily certifiable. Even before *Brinker,* class certification rules were not as demanding as employers typically represent. "Predominance is a comparative concept,' and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On*") (citation omitted). Thus, "[a] class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal.

1  App. 4th 385, 397 (2001), fn. omitted.

2    Plaintiffs maintain that common evidence—in the form of Defendant's written policies,

3  corporate representative testimony, and class member declarations—would answer the predominant

4  common questions and would show that the combined effect of Defendant's meal period policies was

5  that it did not provide Class Members to take compliant breaks.

6      **3.  Common Questions of Law or Fact Predominate As to Plaintiffs' Rest**

7        **Period Claim.**

8    Under the IWC Wage Orders, an employer is required to authorize and permit all employees to

9  take duty free rest periods at the rate of at least 10 minutes for every four hours worked or major fraction

10  thereof. 8 Cal. Code Regs. § 11020 (12). When an employer fails to provide an employee a paid rest

11  period in accordance with the Wage Order, that employer shall pay the employee one hour of pay at the

12  employee's regular rate of pay for each work day that the rest period is not provided. 8 Cal. Code of Reg.

13  § 11020(12)(B); Cal. Lab. Code § 226.7(b).

14    Like their meal period claim, Plaintiffs allege that Nespresso's uniform policies and practices

15  regularly discourage employees from taking rest breaks by prioritizing customer service and sales over

16  employee rest breaks.

17    In *Brinker*, the California Supreme Court made it clear that it is not enough for an employer to

18  merely have compliant written policies. Rather, an employer only satisfies its meal period and rest break

19  obligation "if it relieves its employees of all duty, relinquishes control over their activities and permits

20  them a reasonable opportunity to take an uninterrupted [a] break, and does not ***impede or discourage***

21  them from doing so." *Brinker Rest. Corp.*, 53 Cal. 4th at 1040 (emphasis added). Although the Court's

22  analysis focused on meal periods, the same analysis is true for rest breaks.

23    The sample payroll data produced to Plaintiffs indicates that Nespresso did not pay rest break

24  premiums. Pursuant to *Safeway, Inc. v. Superior Court of Los Angeles Cty. (Esparza)*, 238 Cal. App. 4th

25  1138, 1153 (2015), the total failure to pay break premiums is by itself an indication that AEG

26  systematically violated the law:

27      [Real parties in interest] prove[ ] that[ ] before June 17, 2007, Safeway did not pay
    meal break premiums.... Safeway does not contest this fact. Safeway had

28      thousands or tens of thousands of workers, but for years it never paid statutory

meal break premiums. Why? One explanation is human perfection: Safeway never, ever erred. This explanation is possible. But human perfection is rare. Another explanation is deep, system-wide error: that Safeway was unaware of, or for some other reason[,] violated[ ] its duty to pay statutory premiums when required.

*Safeway, Inc.,* 238 Cal. App. 4th at 1153. Because the failure to provide meal breaks is uniform and applies across-the-class, this "theory of recovery ... is, as an analytical matter, likely to prove amenable to class treatment." *Sav-on Drug Stores, Inc. v. Sup. Ct.*, 34 Cal.4th 319, 327 (2004). Lack of a policy to provide payment of meal or rest premiums under any circumstances is amenable to class treatment. *Safeway*, *Inc.*, 238 Cal. App. 4th at 1150, 1158-62.

### 4.    Common Questions of Law and Fact Predominate As to Plaintiffs' Regular Rate Claim.

Plaintiffs allege that Nespresso underpaid overtime wages by not including all remuneration paid to employees in the regular rate of pay when calculating overtime. Under both federal and California law, overtime work (i.e., hours worked over 8 hours in a day or 40 hours in a week) must be paid at a rate of "no less than one and one half times the regular rate of pay" for that employee. Cal. Lab. Code § 510(a) (emphasis added); Subsection 3(A)(1) of California IWC Wage Order No. 5; F.L.S.A. §§7(a)(1) and (e); *Huntington Memorial Hospital v. Super. Ct.*, 131 Cal. App. 4th 893, 902-03 (2005) (California follows the federal standard for purposes of determining, under the Labor Code, what constitutes the employee's regular rate of pay); *Advanced-Tech Sec. Servs., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700, 707 (2008) (same).

Section 207(e) of the FLSA defines the regular rate as including "all remuneration for employment paid to, or on behalf of, the employee," with the exception of a few enumerated statutory exclusions not applicable here. Thus, all non-discretionary bonuses must be included in the regular rate. 29 C.F.R. §§ 778.208-778.215. And only those few bonuses specifically enumerated as discretionary under the FLSA may be excluded from the regular rate. *See* 29 C.F.R. §§ 778.200 and 778.208. Commissions must also be included in the regular rate, regardless of whether they are computed daily, weekly, biweekly, semimonthly, or some other interval, and the fact that payment is delayed for a time past an employee's normal pay period does not excuse an employer from including the payment in the employee's regular rate. 29. C.F.R. § 778.117.

Similarly, the DLSE manual, like federal regulations, requires the amount of non-discretionary bonuses, piece work earnings, and commissions to be included in the calculation of the regular rate of pay for determining overtime compensation. See DLSE Manual §§ 49.1 to 49.12.3. This requirement is consistent with Labor Code section 200 which defines wages as "all amounts for labor" and 29 U.S.C. section 207, subdivision (e), which provides that the "regular rate" at which an employee is paid shall be deemed to include all remuneration for employment.

Courts are to interpret narrowly against the employer the statutory exclusions from the calculation of the "regular rate." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) (citing *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 295 (1959)); *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) ("exemptions are to be narrowly construed against the employers seeking to assert them") (quotations omitted); *see also Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999) ("Thus, under California law, exemptions from statutory mandatory overtime provisions are narrowly construed."). Moreover, the employer bears the burden of proving the exemptions. *Id.*; *Ramirez*, 20 Cal. 4th at 794 ("therefore the employer bears the burden of proving the employee's exemption").

Claims challenging how an employer calculates the regular rate of pay are routinely certified because they can readily be resolved on a class-wide basis. *See, e.g.*, *Faulkinbury*, 216 Cal. App. 4th at 229 ("the legality of Boyd's policy of excluding the bonus from calculating overtime wages can be determined on a class-wide basis."); *Escano v. Kindred Healthcare Operating Co., Inc.*, No. 09-04778, 2013 U.S. Dist. LEXIS 29899, at *18-20 (C.D. Cal. Mar. 5, 2013) (certifying regular rate class for failure to include shift differentials and bonus compensation in the regular rate calculation).

### 5. Common Questions of Law And Fact Predominate As to Plaintiffs' Business Expense Claim

Plaintiffs allege that Nespresso failed to reimburse Class Members for necessary business expenses related to both the use of personal cellular phones and travel expenses/mileage when attending employee training or other off-site work-related events.

In *Richie v. Blue Shield of California*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014), the district court certified a telephone expense reimbursement class after finding, under Rule 23(a)(2): "that a common question exists as to Plaintiff's telephone-related expense claim under § 2802"

and finding that "Blue Shield appears to have a uniform reimbursement policy with regards to work-related telephone expenses." *Id.* at *16-17. The Court also found a common question of law was whether the Defendant's policy for reimbursement was consistent with California law. *Id.* (citing *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) ("Cochran")). *Cochran* holds that "when employees must use their personal cell phones for work-related calls, Labor Code section 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills." *Id.* at 1140.

In addressing the controlling California authority in *Cochran*, the district court in *Richie* noted its holding that "the employer was required to 'reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone,' even when the employee did not incur an 'extra expense' as a result of that call (for example, when the employee had an "unlimited minutes" plan). *Id.* (citing *Cochran*, at 1144) ("The answer is that reimbursement is always required. Otherwise, the employer would receive a windfall because it would be passing its operating expenses onto the employee. Thus, to be in compliance with section 2802, the employer must pay some reasonable percentage of the employee's cell phone bill.").

Here, Plaintiffs' business expense claim would be established almost entirely on common proof of Defendant's uniform policies and expert analysis of Defendant's business records.

### 6.    The Court Should Certify Plaintiffs' Derivative Claims.

Plaintiffs' complaint includes claims pursuant to Labor Code sections 226, 1198, 1194, 1197, 1197.1, 201, 202, 203 and 204 and California Business & Professions Code sections 17200, *et seq.* These claims are derivative of Plaintiffs' underlying claims for minimum wage violations and meal and rest period premiums. Thus, for the same reasons that the Court should conditionally certify the underlying claims, it should also certify these derivative claims. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

### 7.    Plaintiffs Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and

1    adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1)

2    the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2)

3    Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

4    1020 (9th Cir. 1998).

5            The Rule 23(a) adequacy requirement is met here as Plaintiffs have and will represent putative

6    Class Members with a focus and zeal true to the fiduciary obligation that they have undertaken.

7    Plaintiffs' Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v.*

8    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel

9    prosecute the action vigorously on behalf of the class?").

10            Plaintiffs' Counsel have successfully certified numerous class actions by way of contested

11    motion in state and federal court, and have negotiated class and/or PAGA settlements totaling over 100

12    million dollars on behalf of hundreds of thousands of Class Members. (*See* Perez Decl. ¶¶ 24-32, Ex. 6;

13    Kenner Decl. ¶¶ 20–26.)

14            **8.**        **Class Settlement Is Superior to Other Available Means of Resolution.**

15            Resolving all Class Members' claims through a single class action is superior to a series of

16    individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual

17    members controlling the prosecution of separate actions. There would be less litigation or settlement

18    leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at

19    1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages

20    of a collective bargaining and resolution process.

21            Addressing the allegations through a class action is superior to individual litigation or any

22    alternative methods that may exist. This action was filed precisely because Plaintiffs believed those

23    alternatives would have proven ineffective in addressing the problem on a class-wide basis. Additionally,

24    although the value of the claims is not insignificant, the amount in controversy is not nearly enough to

25    incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir.

26    2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an

27    individual basis, this [superiority] factor weighs in favor of class certification."). As the class action

28    device provides the superior means to effectively and efficiently resolve this controversy, and as the

1    other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the

2    Parties is appropriate.

3               **9.**      **The Proposed Class Notice Adequately Informs Class Members About the**

4                           **Case and Proposed Settlement.**

5         The proposed class settlement notice and claims administration procedure satisfy due process.

6    Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide

7    Class Members with the "best notice practicable" under the circumstances, including "individual notice

8    to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417

9    U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail

10   provides such "individual notice to all members." *Id.* Where the names and addresses of Class Members

11   are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at

12   175.

13        The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the

14   Parties and provides Settlement Class Members with all required information so that each member may

15   make an informed decision regarding his or her participation in the Settlement. The Class Notice

16   provides information regarding the nature of the lawsuit; a summary of the substance of the settlement

17   terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions

18   or objections; the date for the final approval hearing; the formula used to calculate settlement payments;

19   a statement that the Court has preliminarily approved the settlement; a statement that Class Members will

20   release the settled claims unless they opt out; and noticed of pending lawsuits with overlapping claims.

21   Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

22        The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in

23   an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*,

24   *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ."

25   *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The Notice

26   Packet states that the Settlement does not constitute an admission of liability by Defendants, and that

27   Final Approval has yet to be made. The Notice Packet thus complies with the standards of fairness,

28   completeness, and neutrality required of a settlement class notice disseminated under authority of the

1     Court. Rule 23(c)(2) and (e); *Manual* §§ 8.21, 8.39; 30.211, 30.212.

2          The Settlement Administrator will mail the Class Notice to all Settlement Class Members by

3     first class United States mail. (Settlement Agreement ¶ 46.) In the event Notice Packets are returned as

4     undeliverable, the Settlement Administrator will attempt to locate a current address using, among other

5     resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id.* at ¶ 47.) This

6     method was negotiated by the Parties to maximize the Class Member notification rate while ensuring

7     cost effective administration of the Settlement.

8          **C.**      **The Proposed Class Action Settlement Should Receive Preliminary Approval.**

9          Class action settlements must be approved by the court and notice of the settlement must be

10    provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent

11    class members' due process rights, approval of class action settlements involves three steps:

12          1.      Preliminary approval of the proposed settlement;

13          2.      Notice to the class providing them an opportunity to exclude themselves; and

14          3.      A final fairness hearing concerning the fairness, adequacy, and reasonableness of the

15               settlement.

16    *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

17          F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it

18    only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

19          (A)     the class representatives and class counsel have adequately represented the class;

20          (B)     the proposal was negotiated at arm's-length;

21          (C)     the relief provided for the class is adequate, taking into account:

22               (i)      the costs, risks, and delay of trial and appeal;

23               (ii)     the effectiveness of any proposed method of distributing relief to the class,

24                   including the method of processing class-member claims;

25               (iii)    the terms of any proposed award of attorney's fees, including timing of

26                   payment; and

27               (iv)    any agreement required to be identified under Rule 23(e)(3); and

28          (D)     the proposal treats class members equitably relative to each other.

1    The judicial policy favoring settlement of class action suits should guide the Court in evaluating

2    the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004);

3    *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the

4    private consensual decision of the parties" when approving a settlement). As this Circuit has observed,

5    "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .

6    The economics of litigation are such that pre-trial settlement may be more advantageous for both sides

7    than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884

8    F.2d 1222, 1225 (9th Cir. 1989).

9         **D.     The Relief Provided by the Settlement is Fair and Reasonable**

10        At the preliminary approval stage, the Court evaluates whether the settlement is within the

11   "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing

12   should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002).

13   For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players'*

14   *Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage,

15   the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare*

16   *Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

17        The Court need only review the parties' proposed settlement to determine whether it is within

18   the permissible "range of possible judicial approval" and thus, whether the notice to the class and the

19   scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should

20   be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive

21   negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

22   representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM*

23   *Retail Group, Inc.*, 2016 WL 1161453, at \*7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware*

24   *Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

25        **1.     The Settlement Is the Product of a Thorough Investigation of the Factual**

26             **and Legal Issues Implicated by Plaintiffs' Claims and Defendant's**

27             **Defenses**

28        As set forth in greater detail above, based on their analysis of documents and class data produced

1   by Defendant (including a sample of Class Members time and pay records, and Nespresso's labor

2   policies and procedures manuals), Plaintiffs' Counsel were able to realistically assess the value of

3   Plaintiffs' claims and intelligently engage defense counsel in settlement discussions that culminated in

4   the proposed settlement now before the Court. (Perez Decl.¶¶ 4-8; Kenner Decl. ¶ 12.)

5          By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel

6   can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

7   Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

8   known facts and circumstances, including the risk of significant delay and uncertainty associated with

9   litigation, various defenses asserted by Defendant. (Perez Decl.¶ 9; Kenner Decl. ¶¶ 12.)

10                    **2.    The Gross Settlement Amount is Within the Range of Reasonableness**

11         As discussed in detail below, an objective evaluation of the Settlement confirms that the relief

12  negotiated on the Class's behalf—a $950,000 non-reversionary total Gross Settlement Amount—is fair,

13  reasonable, and valuable. The Settlement was negotiated by the Parties at arm's-length before an

14  experienced mediator, and the settlement confers substantial benefits to Class Members. The relief

15  offered by the Settlement is particularly impressive when viewed against the difficulties encountered by

16  plaintiffs pursuing wage and hour cases.

17         In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned,

18  the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among

19  other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the

20  district court's determination is nothing more than an amalgam of delicate balancing, gross

21  approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may

22  presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

23  considering Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

24  625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

25         Federal district courts recognize that there is an inherent "range of reasonableness" in

26  determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any

27  particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

28  completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop.*

*v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[5]

| Defendant's Exposure for the Class Claims | |
|---|---:|
| Off-the-Clock Claim | $550,000.00 |
| Meal Period Claim | $336,000.00 |
| Rest Period Claim | $3,170,000.00 |
| Regular Rate Claim | $50,000.00 |
| Business Expense Claim | $225,000.00 |
| Wage Statement Claim | $1,112,000.00 |
| Final Pay Claim | $1,161,800.00 |
| **Total** | **$6,604,800.00** |

These estimates assume that each and every one of Plaintiffs' claims would have been certified for class-wide resolution, that Plaintiffs would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonable, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiffs' Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendants' maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiffs' claims; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiffs' claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

After taking into account the Discount Factors, Plaintiffs' Counsel determined that it would be reasonable to settle for a fraction of Defendants' maximum potential exposure for the class claims

---

[5] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

(PAGA discussed in the following section), or approximately 15 percent. Such a discount is inherently reasonable given that Plaintiffs would have had to overcome **multiple, dependent** contingencies to prevail on his claims. If anything, the projected odds for each of the above contingencies is generous to the class's position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these dispositive stages.

Courts routinely approve settlements that provide a similar discounted range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).[6]

The instant settlement compares favorably to a previous wage and hour settlement approved by the Northern District of California for comparable wage and hour claims.

| ***Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.)** | |
|---|---|
| Gross Settlement Amount | $2,500,000 |

---

[6] *See also In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552, at *23- 24 (N.D. Cal. June 29, 2017) (granting preliminary approval to class action settlement where gross settlement fund, prior to deducting attorneys' fees and services awards, was valued at 7.5% or less of total possible verdict); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval to class action settlement representing "8.1% of the full verdict value" with net settlement amount representing approximately 5.3% of full verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to settlement with net recovery to Plaintiffs valued at 7.3% of potential maximum recovery); *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (granting final approval where gross settlement amount represented 8.6% of the maximum potential recovery from the class claims and estimated amount distributable to class after accounting for attorneys' fees and other deductions represented approximately 6.1% of maximum potential recovery); *In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approving where "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee and costs—even before any reduction thereof for attorney's fees and costs.").

| *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| Total Number of Class Members | 10,526 |
| Average Class Member Payment | ≈ $150 |
| Final Approval Granted | November 18, 2016 (Judge Richard Seeborg) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description related to the claims alleged in the action against CEC, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations during the period January 27, 2010 through the date the Court grants final approval of the settlement: (i) all claims for unpaid wages and overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for "off-the-clock" work; (viii) all claims asserted under California Labor Code §§ 2698, et seq., and/or California Business & Professions Code §§ 17200, et seq. arising out of the aforementioned claims; and (ix) all claims that could have been alleged based on the circumstances and facts alleged in the action. |

| *Rivas v. BG Retail, LLC*, No. 5:16-cv-06458-BLF (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $175,000 |
| Total Number of Class Members | 396 |
| Average Class Member Payment | ≈ $170 |
| Final Approval Granted | January 16, 2020 (Judge Beth Labson Freeman) |
| Released Claims | All claims that Defendants: (1) failed to pay overtime; (2) failed to pay minimum wages; (3) failed to provide meal periods; (4) failed to provide rest periods; (5) failed to pay wages due timely upon termination of employment; (6) failed to provide itemized wage statements to employees; (7) failed to compensate for split-shifts; (8) failed to reimburse employees for certain business expenses; (9) engaged in unfair business practices; and (10) violated California Labor Code §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, and 2802, California Business and Professions Code §§ 17200 et seq., as well as claims that could have been brought in the Complaint |

| *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $5,000,000 |
| Total Number of Class Members | 12,308 |
| Average Class Member Payment | $255 |

| *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, which occurred during the period from May 1, 2009 to the date on which the Court grants Preliminary Approval (for Urban Employees) and from October 29, 2009 to the date on which the Court grants Preliminary Approval (for Free People Employees), arising from or related to the facts or claims litigated in the Actions against Defendants, whether known or unknown, contingent or accrued, including without limitation statutory, constitutional, contractual, or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for unpaid vacation pay; (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and/or California Labor Code §§ 2698, et seq. based on the preceding claims; (ix) all claims under the provisions of the California Labor Code and/or arising under the Wage Orders adopted by the California Industrial Welfare Commission that arise from or relate to the factual allegations alleged in the Actions; and (x) all claims that were or could have been asserted in the Actions that arise out of the same nucleus of operative facts (see International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action"; noting that whether the claim "arises out of the same transactional nucleus of facts [is] the criteria most stressed in our decisions"). Except as to Plaintiffs, the release expressly excludes claims that arise outside of the Class Period and unrelated claims, including but not limited to, claims for unemployment, disability, Workers' Compensation, retaliation, and discrimination. |

| *Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $875,000 |
| Total Number of Class Members | 723 |
| Average Class Member Payment | $710 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |
| Released Claims | All wage and hour claims, rights, demands, liabilities, and causes of action of every nature and description, which occurred during the Class Period, arising from or related to the facts or claims |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

| *Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.) |
|---|
| litigated in the Action against Defendant, whether known or unknown, contingent or accrued, including without limitation statutory, constitutional, contractual, or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or any other relief, including claims based on the following categories of allegations: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims for unpaid vacation pay; (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and/or California Labor Code §§ 2698, et seq. based on or related to the preceding claims; (ix) all claims under the provisions of the California Labor Code and/or arising under the Wage Orders adopted by the California Industrial Welfare Commission that arise from or relate to the facts alleged or litigated in the Action; and (x) all claims that were or could have been asserted in the Action that arise out of the same nucleus of operative facts (see International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action"; noting that whether the claim "arises out of the same transactional nucleus of facts [is] the criteria most stressed in our decisions")). Except as to Plaintiffs, the release expressly excludes claims that arise outside of the Class Period and unrelated claims, including but not limited to, claims for unemployment, disability, Workers' Compensation, retaliation, and discrimination. |

Notably, whereas the average class member payments in the above settlements ranged from $150 to $710, the average payment here is approximately $800.

### 3.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members.

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to qualifying wage statements received.

Each Class Member's settlement payment will be based on the number of Workweeks the Class Member worked in a non-exempt position during the period from June 3, 2016 through January 4, 2022. Each Class Member's respective share of the Net Settlement Fund will be allocated on a pro-rata basis

1   according to the number of Workweeks worked by each qualifying Class Member. Individual

2   Settlement Payments will be reduced by any required deductions for each Participating Class Members

3   as specifically set forth herein, including employee-side tax withholdings or deductions.

4          **4.**     **The Court Should Preliminarily Approve the Negotiated Attorneys' Fees**

5                **and Costs.**

6       At final approval, Class Counsel will request attorneys' fees in the amount of one-third of the

7   total common fund. Under controlling California law,[7] the common fund method for awarding

8   attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement

9   fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal

10   and state courts have long recognized that when attorneys create a common fund that benefits a class, the

11   attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82

12   Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is

13   'results oriented rather than process-oriented, it better approximates the workings of the marketplace'

14   than the lodestar approach." [citation omitted]).

15       Although California has no benchmark, California courts routinely award attorneys' fees

16   equalling approximately one-third of the common fund's total potential value or higher. *Amaro v.*

17   *Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("fee awards in class actions average

18   around one-third of the recovery regardless of whether the percentage method or the lodestar method is

19   used.") (internal quotations omitted).

20       Consistent with that observation, California state and federal courts routinely award attorneys'

21   fees equaling one-third of the common fund. *See, e.g. Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App.

22

23         [7] In diversity actions, federal courts look to state law in determining whether a party has a right
to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d

24   1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the
right to fees, but also in the method of calculating the fees"). The state law governing the underlying

25   claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d
1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the *Erie*

26   doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima &
Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir.

27   Editions (The Rutter Group, 2015) paragraph 10:497.5. As the Ninth Circuit observed, "even after
CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from

28   state to federal court produces a change of courtrooms and procedure rather than a change of substantive
law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

3:20-cv-05144-SK

4th 860, 871 (2016) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Chavez*, 162 Cal. App. 4th at 66 n.11 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide conclude that fees representing one-third of the total recovery is consistent with market rates). Notably, the California Supreme Court in *Laffitte v. Robert Half Internat. Inc.* affirmed a fee award representing one-third of the fund. *Laffitte*, 231 Cal. App. 4th at 506.

Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

**E.      There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members**

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id.* at *14.

The Settlement does not provide for a reversion of unpaid settlement funds to Defendant or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Moreover, no segment of the Class is given preferential treatment. Plaintiffs will also seek, at a later time (when the Motion for Attorneys' Fees is filed), incentive awards in amounts that are well within the range of such awards in the Ninth Circuit for their work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See infra*, § III.G. *See, e.g., La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

F.     **The Consideration Provided for the PAGA Claim Is Fair and Reasonable in Light of the Amount in Controversy Discounted by the Risks of Continued Litigation.**

Pursuant to the Settlement Agreement, $80,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($60,000) will be paid directly to the LWDA, and the remaining 25% ($20,000) will be paid to Participating Class Members. (Settlement Agreement ¶ 39.)

This result was reached after good-faith negotiation between the parties. The amount was valued as follows: Based on information and evidence produced by Defendant during discovery, Plaintiffs determined that aggrieved employees worked a combined total of approximately 20,000 pay periods during the PAGA statute of limitations period ("PAGA Period"). Unless otherwise provided by the Labor Code,[8] PAGA civil penalties for Labor Code violations are calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation (the "subsequent violation penalty").

However, a number of courts have found that the "subsequent" penalty under PAGA applies only after a <u>court</u> or the Labor Commissioner determines that the employer has violated the Labor Code. *See Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 356 (2021) ("the increased $200 civil penalty for 'subsequent violation[s]' does not apply unless [Plaintiff] presents evidence that the Labor Commission or a court notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil penalties" because the defendant was not given notice by the Labor Commissioner when the

---

[8] For example, Labor Code section 558 authorizes the Labor Commissioner to seek civil penalties for overtime and other workday violations at an initial violation rate of $50 for each underpaid employee for each pay period and a subsequent violation rate of $100 for each underpaid employee for each pay period. *See* Lab. Code § 558; *see also ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 197 (2019) (calculating PAGA penalties for overtime violations according to the Section 558 penalty rates); *Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705, 724 (2017), as modified (Dec. 21, 2017), aff'd but criticized sub nom. *ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019) ("we note that with respect to the meal break and rest break violations . . . section 558 provides either a $50 or $100 assessment for each violation during a pay period").

1    "subsequent" violations occurred).[9] Under this line of cases, Defendant's exposure would be

2    approximately $2 million = 20,000 violative pay periods × $100.

3        It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil

4    penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result

5    in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In

6    reducing PAGA penalties, courts have considered issues including whether the employees suffered

7    actual injury from the violations, whether the defendant was aware of the violations, and the employer's

8    willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018)

9    (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc*., 193 F. Supp. 3d

10   1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL

11   7563047, at *4 (C.D. Cal. Aug. 12, 2011).

12       For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA

13   penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—

14   **or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the

15   maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith

16   attempts" to comply with meal period obligations and because the court found the violations were

17   minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced

18   award of a $150,000 penalty under PAGA. *Id.* at 529.

19       Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding

20   $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also*

21   *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction

22

23       [9] *See also Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998, at *5
     (C.D. Cal. June 10, 2019) ("employers are not subject to heightened penalties . . . until a court or

24   commissioner notifies the employer that it is in violation of the Labor Code . . . [Plaintiff] has not offered
     evidence that the Labor Commission or a court has notified them of PAGA violations [thus] PAGA's

25   heightened penalty of $200 for subsequent violations will not be calculated to determine the amount in
     controversy"); *Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014

26   WL 4961182 (C.D. Cal., October 2, 2014) ("Under the Labor Code, if an employer does not have notice
     that they are committing a violation, they are not subject to the heightened penalties."); *Trang v. Turbine

27   Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal.
     Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent

28   violations unless and until a court or commissioner notifies the employer that it is in violation of the
     Labor Code"), citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008).

1    under specified PAGA claim where the employer produced evidence that it took its obligations

2    seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May

3    12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven,

4    remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A*

5    *Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15,

6    2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with

7    recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis*

8    *Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013)

9    (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous

10    other PAGA claims).

11        Plaintiffs therefore determined an appropriate range of settlement for PAGA penalties as a

12    percentage of the settlement range that was consistent with other hybrid class/PAGA settlements

13    approved by California courts. [10] Where PAGA penalties are negotiated in good faith and "there is no

14    indication that [the] amount was the result of self-interest at the expense of other Class Members," such

15    amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009

16    U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal.

17    App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which

18

19        _____
    [10] *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at *3 (E.D. Cal.
20    June 29, 2016) (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties
    with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012
21    WL 5364575 at *7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement containing $10,000
    PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP,
22    2011 WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing $10,000
    PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC
23    10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement
    fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties);
24    *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane
    Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated
25    to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County
    Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which
26    approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta
    Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F.
27    Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the
    settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County
28    Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which
    $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

1    does not allocate any damages to the PAGA claims.").

2    **IV.    CONCLUSION**

3          The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately

4    presented the materials and information necessary for preliminarily approval, the Parties request that the

5    Court preliminarily approve the settlement.

6

7    Dated: November 7, 2022                    Respectfully submitted,

8                                      By:  /s/ Brandon Brouillette

9                                          Raul Perez
                                           Mark A. Ozzello
                                           Brandon Brouillette
10                                         Joseph Hakakian
                                           **CAPSTONE LAW APC**
11
                                           Carney R. Shegerian
12                                         Cheryl A. Kenner
                                           **SHEGERIAN & ASSOCIATES, INC.**
13
                                           Attorney for Plaintiffs Omar Zine and William Baber
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-05144-SK