Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Omar Zine

Carney R. Shegerian (SBN 150461)
CShegerian@Shegerianlaw.com
Cheryl A. Kenner (SBN 305758)
CKenner@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone:    (310) 860-0770
Facsimile:    (310) 860-0771

Attorneys for Plaintiff William Baber

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ZINE, individually, and on behalf of other members of the general public similarly situated,<br><br>　　　　Plaintiff,<br>vs.<br><br>NESPRESSO USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: 3:20-cv-05144-SK<br>Consolidated with 3:21-cv-00487-JSC<br><br>Assigned to the Hon. Sallie Kim<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　May 8, 2023<br>Time:　9:30 a.m.<br>Place:　Courtroom C |
| WILLIAM BABER, an individual, on behalf of himself and all others similarly situated and aggrieved,<br><br>　　　　Plaintiff,<br>vs.<br><br>NESPRESSO USA, INC., a Delaware corporation; NESTLE USA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 8, 2023 at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom C of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Sallie Kim presiding, Plaintiffs Omar Zine and William Baber will, and hereby do, move this Court to award $316,667 in attorneys' fees; $12,198.82 in litigation costs and expenses; and Class Representative Enhancement Payments of $5,000 to each Plaintiff.

This Motion should be granted because: (1) under the California and Ninth Circuit common fund doctrines, the fee request is reasonable when measured against the benefits conferred by the Settlement and non-reversionary common fund; (2) public policy recognizes that attracting competent counsel to litigate wage and hour cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks; (3) no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for Plaintiffs' service on their behalf; and (4) the absence of objection to the settlement to date confirms that the requested attorneys' fees, costs, and Class Representative Enhancement Payments should be approved.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of the Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payments; (3) the Declaration of Raul Perez; (4) the Declaration of Cheryl A. Kenner; (5) the Declaration of Omar Zine; (6) the Declaration of William Baber; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: February 2, 2023                                      Respectfully submitted,

                                                             By:  /s/ Raul Perez
                                                                  Raul Perez
                                                                  Mark A. Ozzello
                                                                  Joseph Hakakian
                                                                  **CAPSTONE LAW APC**

                                                                  Carney R. Shegerian
                                                                  Anthony Nguyen
                                                                  Cheryl A. Kenner
                                                                  **SHEGERIAN & ASSOCIATES, INC.**

                                                                  Attorneys for Plaintiffs Omar Zine and William Baber

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   Plaintiffs' Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard. .................................................................................................................. 2

    B.   Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Controlling California Law. ........................................... 3

    C.   Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Ninth Circuit Precedent. .................................................. 5

    D.   Other Factors Support Plaintiffs' Fee Request. ........................................................ 8

        1.   The Results of the Litigation Support the Requested Fees. ................................ 8

        2.   The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Fees. ............................................................................. 9

        3.   The Skill of Counsel and Work Performed Support the Requested Fees. ......... 9

    E.   The Lodestar Cross-Check Attests to the Reasonableness of the Negotiated Fee Request. .................................................................................................................. 10

    F.   Plaintiffs' Counsel's Out-of-Pocket Expenses Should Be Reimbursed. ................. 12

    G.   The Proposed Class Representative Enhancement Payments Are Fair and Reasonable. ............................................................................................................. 12

III. CONCLUSION ............................................................................................................ 14

**TABLE OF AUTHORITIES**

**STATE CASES**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) .................................................................. 11

*Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021) ........................................................... 1

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ................................................................................ 1, 4

*Ctr. for Biological Diversity v. Cty. of San Bernardino*, 185 Cal. App. 4th 866 (2010) ............................ 11

*Horsford v. Bd. of Trustees of California State Univ.*, 132 Cal. App. 4th 359 (2005) ................................. 9

*Horsford v. Board of Trustees*, 132 Cal. App. 4th 359 (2005) ................................................................... 11

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) .................................................................. 10

*Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88 (2015) ........................................................................ 11

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ................................................................................................ 9

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ............................................................................... 4

*Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860 (2014) ............................................................... 1, 4

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) .......................................................................... 5

*Pellegrino v. Robert Half Int'l*, 182 Cal. App. 4th 278 (2010) .................................................................. 11

*PLCM Group v. Drexler*, 22 Cal. 4th 1084 (2000) .................................................................................... 10

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .................................................................................................... 11

*Spann v. J.C. Penney Corp.*, No. 12-0215-FMO, 2016 WL 5844606 (C.D. Cal. Sept. 30,
    2016) ..................................................................................................................................................... 11

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001) ....................................................................... 11


**FEDERAL CASES**

*Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .................................................... 13

*Bush v. Cheaptickets, Inc.*, 425 F.3d 683 (9th Cir. 2005) ............................................................................ 3

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................. 11

*Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-01730 DOC, 2014 WL 2761316 (C.D. Cal.
    June 12, 2014) ......................................................................................................................................... 7

*Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) .................................................................................................. 5

*In re Heritage Bond Litig.,* 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ................................................................................................................. 9

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................... 12

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............................ 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .................. 5

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) ................................................................................................................ 12

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475 (C.D. Cal. June 25, 2014) ............................................................................................................... 13

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013) ................................................................ 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) .................................. 3

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007) .................................................... 4

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .................................................. 11

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) .................................................................................................. 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................................. 3, 6

**SECONDARY AUTHORITIES**

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) ................................ 1

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*: *1993-2008* (2010) 7 J. of Empirical Leg. Stud. 248 ................................................................. 7

Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award* (2010) 7 J. Empirical Leg. Stud. 811 ............................................................................................. 7

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27, March 2004 ............... 4

## I. INTRODUCTION

Plaintiffs Omar Zine and William Baber brought their respective actions to secure important workplace protections—payment of minimum and overtime wages, and relief to take meal and rest breaks—for current and former employees of Defendant Nespresso USA, Inc. ("Defendant") (collectively with Plaintiffs, the "Parties"). Despite the risk and uncertainty associated with litigating the claims, Plaintiffs secured a $950,000 **non-reversionary settlement** that will provide timely monetary relief to over 570 workers.

Having obtained valuable relief for the Settlement Class, Plaintiffs seek an award of attorneys' fees in the amount of $316,667, or one-third of the total non-reversionary settlement fund. The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results obtained by Plaintiffs' Counsel, the complexities of the litigation, and the contingent risk that Plaintiffs' Counsel assumed.

Under California law which governs this fee request, the percentage of the fund requested is entirely consistent with fee awards in similar cases, including recent decisions in comparable wage and hour class litigation that awarded fees ranging from 30 to 40 percent of the common fund. *See*, *e.g.*, *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 871 (2014) ("*Laffitte I*")[1] ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("fee awards in class actions average around one-third of the recovery" regardless of "whether the percentage method or the lodestar method is used."); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) (same).

Other factors support this fee request. As discussed in more detail in the Motion for Preliminary

---

[1] The amended California Rule of Court 8.1115(e), subdivision (2) reinstates the intermediate court decision following a decision on review by the Supreme Court: "a published opinion of a Court of Appeal in the matter and any published opinion of a Court of Appeal in a matter in which the Supreme Court has ordered review and deferred action pending the decision, is citable and has binding or precedential effect, except to the extent it is inconsistent with the decision of the Supreme Court or is disapproved by that court."

Approval of the Class Action Settlement (*see* Dkt. No. 53), Plaintiffs' Counsel delivered significant results to the Class in the face of adverse conditions and assumed substantial risk in litigating this action on a contingency basis, having invested over 500 hours of their time toward the zealous prosecution of the class's claims. These hours were spent: (1) exchanging discovery; (2) analyzing a sample of Class Members' time and payroll records; (3) interviewing employees to gather evidence on the claims alleged in this case; (4) developing the theories of liability for the then upcoming certification motion; and (5) preparing for mediation and developing a realistic model of Defendant's exposure.

In addition to attorneys' fees, Plaintiffs' Counsel also seek reimbursement for their litigation costs in the amount of $24,085.88. These costs were necessarily incurred in connection with the prosecution and settlement of the action, are of the kind that would typically be paid by a fee-paying client, and are thus reimbursable.

Lastly, Plaintiffs move for Class Representative Enhancement Payments of $5,000, each, for their service on behalf of the Settlement Class.[2]

For these and the reasons set forth in greater detail below, Plaintiffs respectfully submit that the requested attorneys' fees, costs, and Class Representative Enhancement Payments are fair and reasonable, and should be approved.

**II.    ARGUMENT**

    **A.    Plaintiffs' Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard.**

Courts have encouraged litigants to resolve fee issues by agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major litigation" arising from a request for attorneys' fees after the matter has been resolved. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").

In light of the policy favoring settlement of fee disputes, district courts must account for the fact

---

[2] In addition to the Class Representative Enhancement Payments, Defendant has agreed to pay Plaintiffs the sum of $5,000, each, for a general release of all claims arising out of their employment.

that "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014), *vac'd on other grounds*, 2014 U.S. App. LEXIS 21950 (9th Cir. 2014). Accordingly, the Ninth Circuit holds that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id.* (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) (internal quotations omitted; emphasis added). Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount of attorneys' fees.

These considerations are particularly appropriate where, as here, the parties negotiated the settlement at arm's-length with the guidance of an experienced mediator. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008LEXIS 108195 *12 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

The settlement negotiations were adversarial and non-collusive, and the resulting settlement of attorneys' fees, as a function of the overall settlement's value, is likewise fair, reasonable, and free of collusion.

**B.     Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Controlling California Law.**

In diversity actions, federal courts must apply state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).[3]

---

[3] Class actions removed under the Class Action Fairness Act of 2005 (CAFA) are diversity actions. *See Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (CAFA "broadens diversity jurisdiction for certain qualifying class actions and authorizes their removal . . . ."). As the Ninth Circuit

As reinforced recently by the California Supreme Court, California law expressly authorizes the percentage method for awarding attorneys' fees in common fund cases. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) ("*Laffitte II*") (joining other jurisdictions in holding that the trial court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."). California—by choice—has no benchmark. *See Laffitte II*, 1 Cal. 5th at 495 (recognizing the Ninth Circuit's benchmark of 25%, but not adopting a benchmark for California). Instead, California courts have routinely awarded attorneys' fees equalling thirty percent or more of the common fund's total potential value.[4] *See*, *e.g.*, *Laffitte I*, 231 Cal. App. 4th at 871 ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (accord); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide conclude that fees representing one-third of the total recovery is consistent with market rates). Notably, the California Supreme Court in *Laffitte II*, affirmed a fee award representing one-third of a non-reversionary fund. *See id.* at 506.

---

observed, "even after CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

[4] *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No. BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential Brokerage Co.*, No. BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic Mortuary Servs., Inc.*, No. BC408054 (L.A. Super. Ct.) (33% award); *Mares v. BFS Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super. Ct.) (33% award); *Blair et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award); *Perez and Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.) (33% award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 9000517 (San Bernardino Super. Ct.) (33% award); *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.) (33% award); *Clymer and Benton v. Candle Acquisition Co.*, No. BC328765 (L.A. Super. Ct.) (33% award); *Dunlap v. Bank of America, N.A.*, No. BC328934 (L.A. Super Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP 4331 (San Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No. BC328111 (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782 (L.A. Super Ct.) (33% award); *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A. Super. Ct.) (33% award); *Boncore v. Four Points Hotel ITT Sheraton*, No. GIC807456 (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*, No. BC290071 (L.A. Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A. Super. Ct.) (40% award).

A fee award in the amount of one-third of the common fund is also reasonable because it best reflects the market rate for contingency fees. *See Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 47 (2000) ("attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace"). This is because such a request reflects the rate negotiated in "typical contingency fee agreements [which] provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried." *Fernandez v. Victoria Secret Stores LLC*, 2008 U.S. Dist. LEXIS 123546, *55-57 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements and finding that a fee award constituting 34% of the fund is reasonable on that basis). Because the negotiated fee structure mimics the marketplace, it is reasonable and should be approved.

### C. Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Ninth Circuit Precedent.

Although this motion is governed by California law, Plaintiffs' fee request is also reasonable under federal law. The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" where—as here—each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* (*citing Van Gemert*, 444 U.S. at 479).

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method proposed here. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296. Where, as here,

fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate. *See In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method.").

In non-diversity actions, the Ninth Circuit has established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047. However, the Ninth Circuit states that the benchmark is the "starting point for analysis" and notes that "it may be inappropriate in some cases." *Id.* at 1048. The "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id*. The district court's duty is to not presume benchmark percentage applies, but simply "whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage." *Id*.

Thus, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); *In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (in "most common fund cases, the award exceeds that benchmark"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most

Page 6
MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS

common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage").

District courts within the Ninth Circuit routinely award attorneys' fees of one-third or more of the common fund, particularly for wage and hour class action settlements.[5] Awards of one-third are likewise routinely upheld by the Ninth Circuit. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund). A fee award representing one-third of the fund falls within the range of other comprehensive surveys of class action settlements and fee awards. *See* Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award* (2010) 7 J. Empirical Leg. Stud. 811, 833 (analyzing 444 cases between 2006-2007 and concluding that "[m]ost fee awards were between 25 percent and 35 percent, with almost no awards more than 35 percent."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*: *1993-2008* (2010) 7 J. of Empirical Leg. Stud. 248, 262, fn.16 (finding a similar range of fee awards).

Accordingly, Plaintiffs' request for attorneys' fees in the amount of $316,667, or one-third of the

---

[5] *See, e.g., Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (awarding 30% of $1.6 million fund in attorneys' fees in a California Labor Code action and observing that 30% of the fund is "not uncommon for courts in this jurisdiction"); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third in fees in a wage and hour class action); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013) (awarding one-third of the settlement fund in a wage and hour class action because there were "sufficient reasons to exceed [the benchmark] considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third percent in wage and hour class action); *Gallegos v. Atria Management Company, LLC*, No. 5:16-cv-00888-JGB-SP (C.D. Cal. Jan. 28, 2019) (awarding one-third of common fund in fees in wage and hour class action); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (awarding one-third of common fund in fees in wage and hour class action); *Quintana v. Claire's Boutiques, Inc.*, No. 5:13-cv-00368-PSG (N.D. Cal. Dec. 1, 2015), Dkt. No. 88 (awarding attorneys' fees representing 33% of the fund); *Hightower v. JPMorgan Chase Bank, N.A.*, Case No. 2:11-cv-01802-PSG-PLA (C.D. Cal. Oct. 5, 2015) (awarding attorneys' fees representing 30% of the fund); *Bernal v. DaVita, Inc.*, No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) (same); *Singer v. Becton Dickinson & Co.*, 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

$950,000 common fund, is consistent with established Ninth Circuit precedent.

### D. Other Factors Support Plaintiffs' Fee Request.

In addition to the results achieved and awards in comparable cases, courts in this Circuit have also considered additional factors when evaluating the fairness of the award. These factors include: (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the attorneys; and (4) a lodestar cross-check. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). While no single factor is determinative of reasonableness, each factor supports Plaintiffs' request for attorneys' fees in the amount of one-third of the common fund.

#### 1. The Results of the Litigation Support the Requested Fees.

By taking action to enforce state and federal labor laws, Plaintiffs and Plaintiffs' Counsel have vindicated the rights of over 570 workers and have secured $950,000 in relief for their claims. The relief offered by the settlement is particularly valuable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see* Motion for Preliminary Approval). Indeed, the Ninth Circuit has recognized that complex litigation is often necessary to effectively enforce workplace protection legislation:

> The California Labor Code protects all workers regardless of their immigration status or financial resources. In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.

*Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013). By obtaining a significant recovery for the class, Plaintiffs' Counsel have vindicated the rights of workers and enforced compliance with important workplace regulations.

Additionally, the public interest served by the lawsuit likewise supports the requested award of attorneys' fees. In *Lealao*, 82 Cal. App. 4th 19, the court held that in determining the appropriate award of attorneys' fees, the trial court should consider the need to encourage the private enforcement necessary to vindicate many legal rights, as well as the role that representative actions play in relieving the courts of the need to separately adjudicate numerous claims.

Given the result, this action will undoubtedly deter other similarly situated employers from taking advantage of their employees. In a related vein, unless competent attorneys are fully compensated

when they take on large corporate defendants, unlawful practices at issue here will likely go unchecked.

### 2. The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Fees.

The contingent risk that Plaintiffs' Counsel assumed in prosecuting the action supports the requested attorneys' fees and costs. Plaintiffs' Counsel took this case on a pure contingency basis, and had no guarantee that they would receive any remuneration for the many hours they spent litigating the Class's claims, or for the out-of-pocket costs they reasonably incurred to date.

By undertaking representation of a large number of affected employees in wage and hour actions, attorneys like Plaintiffs' Counsel inevitably must be prepared to make a significant investment of time, energy, and resources. Courts have thus explained that a multiplier is needed because these kinds of high-stakes, publicly-beneficial litigation are "fraught with uncertainty and even the most scrupulous attorney will 'win some and lose some.'" *Horsford v. Bd. of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 400 n. 11 (2005). Although they achieved a significant victory here, compensation is necessary to make up for cases where Plaintiff's Counsel took on a meritorious case, litigated the case expertly, but did not recover attorneys' fees, either because the defendant was insolvent or due to the pitfalls of litigation.

In summary, because attorneys pursuing claims on contingency will sometimes lose after expending hundreds of hours, and often advancing thousands of dollars in expenses, an enhancement ensures that the risks do not outstrip the incentives to pursue claims on behalf of employees. The high contingent risk borne by Plaintiffs' Counsel thus supports the fee request.

### 3. The Skill of Counsel and Work Performed Support the Requested Fees.

The skill and experience of counsel and nature of work performed, also militate in favor of Plaintiffs' fee request. *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992). Plaintiffs' Counsel are seasoned attorneys with considerable experience in wage and hour class actions. Plaintiffs' Counsel regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Declaration of Raul Perez ["Perez Decl."] ¶¶ 15-23, Ex. 2; Declaration of Cheryl A. Kenner ["Kenner Decl."] ¶¶ 22-30.) Plaintiffs' Counsel thoroughly investigated Plaintiffs' claims and made skillful use of documents and data provided by

1  Defendant to assess its potential exposure as to the claims at issue and to bring the litigation to a
2  successful resolution.

### E. The Lodestar Cross-Check Attests to the Reasonableness of the Negotiated Fee Request.

The trial court may use an abbreviated lodestar "cross-check" for common fund awards if the court considers it useful. *Laffitte II*, 1 Cal. 5th at 504-05. However, under *Laffitte II*, this is not meant to displace the percentage analysis, but rather to act as a backstop. Indeed, the Supreme Court expressly instructed that "the lodestar calculation, when used in this manner, does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the fee award." *Laffitte II*, 1 Cal. 5th at 505. Critically, the Court in *Laffitte II* emphasized that only where the "multiplier calculated by means of a lodestar cross-check is **extraordinarily high or low**" should the court "consider whether the percentage should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id.* (emphasis added). Accordingly, when the cross-check multiplier is within a normal range, the lodestar-cross check does not provide a basis for a court to reduce the fee award. Furthermore, in conducting a lodestar cross-check, the court is not "required to closely scrutinize each claimed attorney-hour." *Laffitte II*, 1 Cal. 5th at 505. An evaluation may be done by reviewing "counsel declarations summarizing overall time spent." *Id*.

In conducting a lodestar cross-check, the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by plaintiffs' counsel on the case by a reasonable hourly rate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009). To determine whether the requested rate is reasonable, courts look to the prevailing rate for similar work in the pertinent geographic region. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096-97 (2000) (using prevailing hourly rate in community for comparable legal services even though party used in-house counsel). Here, Plaintiffs' Counsel's hourly rates are comparable to, or less than, those charged by other class action plaintiffs' counsel and the firms defending class actions, and have been approved by numerous federal and state courts. (Perez Decl. ¶¶ 10-13, Ex. 1; Kenner Decl. ¶ 19.)

Likewise, the total attorney hours expended on this action are reasonable and in line with comparable cases. In determining the reasonableness of the hours expended, "the court should defer to

the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 104 (2015) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Plaintiffs' Counsel billed a total of approximately 500 hours. (Perez Decl. ¶¶ 10; Kenner Decl. ¶¶ 10-14, 17-18.) Plaintiffs' Counsel will also expend further hours not accounted for here to draft the final approval motion and continue to serve the Class in wrapping up this settlement. (Perez Decl. ¶ 10; Kenner Decl. ¶ 15.)

Multiplying the total hours billed by Plaintiffs' Counsel to the litigation by their reasonable hourly rates yields a lodestar of $362,170.50. (Perez Decl. ¶ 10; Kenner Decl. ¶¶ 17-18.) When plaintiffs' counsel seek an amount in fees that is less than what they actually billed, the requested fee amount is generally considered reasonable. *See, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (finding that, if the court is asked to apply a negative multiplier, it "suggests the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by Plaintiff's Counsel.").

Plaintiffs' Counsel would otherwise be entitled to a ***positive*** multiplier based on factors most commonly cited by courts, including: (1) the results obtained; (2) the contingent nature of the fee award; and (3) the skill displayed by counsel. *See Serrano III*, 20 Cal. 3d at 49; *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 835 (2001) (recognizing "results obtained" as a factor). Additionally, under California law, a 1.5 multiplier would be awarded ***for the contingent risk factor alone***, and without the presence of other factors. *See Ctr. for Biological Diversity v. Cty. of San Bernardino*, 185 Cal. App. 4th 866, 900 (2010) (affirming a 1.5 risk multiplier in a non-complex statutory case and expressly rejecting the application of other multiplier factors). *See also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1174 (2008) (affirming a 1.65 contingent risk multiplier in a wage and hour class action, explaining that "counsel risked never receiving any compensation *at all*" (emphasis in original)); *Pellegrino v. Robert Half Int'l*, 182 Cal. App. 4th 278, 292 (2010) (affirming a 1.75 multiplier due, in part, to "Plaintiff's Counsel not being paid for their work in the event that [defendant] prevailed on [an] affirmative defense.").

The lodestar cross-check confirms that Plaintiffs' fee request is fair and reasonable and should be

approved.

**F.     Plaintiffs' Counsel's Out-of-Pocket Expenses Should Be Reimbursed.**

Defendant has agreed to pay Plaintiffs' Counsel's litigation expenses as part of the negotiated fees. For these expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted). In California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Plaintiffs' Counsel have expended costs of $24,085.88 to date, which includes, e.g., court fees, consultant fees, Westlaw charges, and mediation fees. (Perez Decl. ¶ 14; Kenner Decl. ¶¶ 20-21.) These are costs of precisely the sort that are reimbursable because they are reasonable and were necessarily incurred during the case's pendency.

**G.     The Proposed Class Representative Enhancement Payments Are Fair and Reasonable.**

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives).

So long as the incentive awards do not create a conflict of interest between the representatives and class members, modest payments to named plaintiffs for their services as class representatives are

customary and generally approved. *See Van Vranken*, 901 F. Supp. at 300. To determine whether the proposed incentive award is fair and reasonable, many courts in the Ninth Circuit apply the "five-factor test set forth in *Van Vranken*." *Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836 *19 (S.D. Cal. Mar. 5, 2014).

Under the *Van Vranken* test, courts consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299 (citations omitted). However, not all factors need to present. Rather, the Court may weigh the factors and, award fees that are "just and reasonable under the circumstances." *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299). Here, the proposed $5,000 enhancement payments are just and reasonable.

First, the Class Representative Enhancement Payments are justified in light of the reputational risk that Plaintiffs have assumed by litigating claims against a former employer. *See Billinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily learn that a prospective employee served as a plaintiff through the internet); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person . . . Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

Employers commonly screen employee candidates to determine whether they have ever filed suit, and employee candidates who might be branded "litigious" are likely to be screened out of the process. In fact, an entire industry has developed for providing employers with background information on employee candidates. By bringing this action against an employer, Plaintiffs have assumed reputational risk that may impact their ability to find employment in the future. *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014)

(awarding $15,000 to each named plaintiff in part for attesting to their fear that the lawsuit will harm their future job prospects in the industry).

Second, the Class Representative Enhancement Payments should be awarded because Plaintiffs "remained fully involved and expended considerable time and energy during the course of the litigation." *In re Toys 'R' Us-Del FACTA Litig.*, 295 F.R.D. at 471 (citation omitted). As detailed in their declarations, Plaintiffs expended considerable time and effort assisting Plaintiffs' Counsel with the prosecution of the class's claims, and their unique contribution to the litigation should be rewarded.

Third, the Class Representative Enhancement Payments are appropriate because Plaintiffs otherwise "will not gain any benefit beyond that he [or she] would receive as an ordinary class member." *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund."). Here, absent the incentive award, Plaintiffs will recover no more than other Class Members, despite undergoing personal sacrifice in bringing this suit on behalf of the Class.

In sum, due to Plaintiffs' effort, commitment, and personal sacrifice, all Class Members can now benefit from a $950,000 settlement. Thus, the proposed incentive award for Plaintiffs' service as class representatives are fair and provide adequate relief for the Settlement Class, and the risk of being branded "litigious" by prospective employers, is reasonable and deserved.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant: (1) an award of attorneys' fees in the amount of one-third of the common fund, or $316,667; (2) out-of-pocket costs to be reimbursed to Plaintiffs' Counsel; and (3) the proposed Class Representative Enhancement Payments.

Dated: February 2, 2023

Respectfully submitted,

By: /s/ Raul Perez
Raul Perez
Mark A. Ozzello
Joseph Hakakian
**CAPSTONE LAW APC**

Carney R. Shegerian
Anthony Nguyen
Cheryl A. Kenner
**SHEGERIAN & ASSOCIATES, INC.**

Attorneys for Plaintiffs Omar Zine and William Baber