Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff Omar Zine*

Carney R. Shegerian (SBN 150461)
CShegerian@Shegerianlaw.com
Cheryl A. Kenner (SBN 305758)
CKenner@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone:    (310) 860-0770
Facsimile:    (310) 860-0771

*Attorneys for Plaintiff William Baber*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ZINE, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>NESPRESSO USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants.<br><br>WILLIAM BABER, an individual, on behalf of himself and all others similarly situated and aggrieved,<br><br>    Plaintiff,<br><br>  vs.<br><br>NESPRESSO USA, INC., a Delaware corporation; NESTLE USA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.: 3:20-cv-05144-SK<br>Consolidated with 3:21-cv-00487-JSC<br><br>Assigned to the Hon. Sallie Kim<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  May 8, 2023<br>Time:  9:30 a.m.<br>Place:  Courtroom C |

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE** that on May 8, 2023 at 9:30 a.m., or as soon thereafter as counsel

3  may be heard, in Courtroom C of the above-captioned court, located at 450 Golden Gate Avenue, San

4  Francisco, California 94102, the Honorable Sallie Kim presiding, Plaintiffs Omar Zine and William

5  Baber will, and hereby do, move this Court for entry of an order and judgment granting final approval of

6  the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendant

7  Nespresso USA, Inc., seeks final approval of: (1) the Joint Stipulation of Class Action and PAGA

8  Settlement and Release, (2) settlement payments to Participating Class Members and the LWDA, and

9  (3) costs/expenses to the settlement administrator, CPT Group, Inc.

10          This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of

11  Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the

12  previously filed Motion for Attorneys' Fees, Costs and Expenses, and Class Representative

13  Enhancement Payments and supporting declarations; (4) the Declaration of Raul Perez; (5) the

14  Declaration of Cheryl A. Kenner; (6) the Declaration of Irvin Garcia on behalf of CPT Group, Inc.; (7)

15  the [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement; (8) the

16  [Proposed] Judgment; (9) the records, pleadings, and papers filed in this action; and (10) upon such other

17  documentary and/or oral evidence as may be presented to the Court at the hearing.

18

19  Dated: April 4, 2023                              Respectfully submitted,

20                                                 By:   /s/ Raul Perez
                                                   Raul Perez
21                                                 Mark A. Ozzello
                                                   Joseph Hakakian
22                                                 **CAPSTONE LAW APC**

23                                                 Carney R. Shegerian
                                                   Anthony Nguyen
24                                                 Cheryl A. Kenner
                                                   **SHEGERIAN & ASSOCIATES, INC.**
25
                                                   Attorneys for Plaintiffs Omar Zine and William
26                                                 Baber

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS AND PROCEDURE ............................................................................... 3

    A.   Brief Overview of the Litigation ................................................................ 3

    B.   The Parties Settled at Mediation ................................................................ 4

    C.   Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness. ........... 4

    D.   The Proposed Settlement Fully Resolves Plaintiffs' Claims ....................... 6

        1.   Composition of the Settlement Class ................................................ 6

        2.   Settlement Consideration .................................................................. 6

        3.   Formula for Calculating Payments from the Net Settlement Fund ........... 6

        4.   Formula for Calculating Payments from the PAGA Fund ................ 7

        5.   Releases by Class Members and PAGA Members ........................... 7

    E.   The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order. ........................................................................ 7

III. ARGUMENT ....................................................................................................... 8

    A.   Class Certification Requirements Are Met. ................................................ 8

    B.   The Court Should Grant Final Approval of the Class Settlement. ............. 9

        1.   The Settlement Was Negotiated at Arm's Length by Experienced Counsel. ........... 10

        2.   The Extent of Discovery Completed Supports Final Approval. ........... 10

        3.   The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation. ........................................................ 11

        4.   The Settlement Class Has Responded Positively to the Settlement. ........... 13

    C.   The Court Should Approve the PAGA Settlement. .................................. 14

    D.   The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval. ................................................................ 17

1

IV.   CONCLUSION...............................................................................................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

3:20-cv-05144-SK

1

**TABLE OF AUTHORITIES**

2

3    **FEDERAL CASES**

4    *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035

5        (C.D. Cal. Dec. 30, 2013)............................................................................................ 16

6    *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015).......................................................... 10

7    *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945 (N.D. Cal. July 21,

8        2014)........................................................................................................................... 13

9    *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021) ...................................... 15

10    *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)......................... 8

11    *Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014

12        WL 4961182 (C.D. Cal., October 2, 2014).............................................................. 15

13    *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 (N.D. Cal Feb.

14        16, 2011) .................................................................................................................... 17

15    *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ................ 13

16    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................... 9

17    *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016)......................................... 16

18    *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 (E.D. Cal.

19        June 29, 2016) ............................................................................................................ 17

20    *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047

21        (C.D. Cal. Aug. 12, 2011) .......................................................................................... 16

22    *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575

23        (E.D. Cal. Oct. 31, 2012)........................................................................................... 17

24    *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL

25        1687832 (N.D. Cal. Apr. 22, 2010) .......................................................................... 14

26    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................... 9, 14

27    *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.

28        Cal. Apr. 3, 2009)...................................................................................................... 17

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
3:20-cv-05144-SK

*In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) ..................................... 13

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal.

    July 22, 2019) ................................................................................................................... 10

*In re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) ................................ 13

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ...................... 11

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) .................................. 8

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ......................... 11

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................... 13

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) .................................. 13

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D.

    Cal. June 15, 2012) ........................................................................................................... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .......................................... 11

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................... 11

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................... 13

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .............................. 11

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ................................................. 11

*Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP

    (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ...................................................... 15

*Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998 (C.D. Cal.

    June 10, 2019) ................................................................................................................... 15


**CALIFORNIA CASES**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) .............................................. 15

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ................................................. 16

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12,

    2011) ................................................................................................................................. 16

*Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021) .............................................. 15

*Lawson v. ZB, N.A.*, 18 Cal. App. 5th 705 (2017) ........................................................... 15

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) ................................................... 17

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) .............................. 16

*ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019) ................................................................. 15


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) ........................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 8


**STATE STATUTES**

Cal. Lab. Code § 558 ........................................................................................................ 15

Cal. Lab. Code § 2699(h) .................................................................................................. 16

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        On December 12, 2022, this Court granted preliminary approval of the Joint Stipulation of Class

4    Action and PAGA Settlement and Release[1] and approved distribution of the Notice of Class Action

5    Settlement to all Class Members. Class Members were given 45 days to opt out or object to the

6    Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiffs Omar Zine

7    and William Baber are pleased to report that: (1) no Class Members opted out; (2) no Class Members

8    have objected to the Settlement; (3) the **entire Net Settlement Fund will be disbursed to all**

9    **Participating Class Members**; (4) the average payment to Participating Class Members from the Net

10   Settlement Fund is $837.67, and the highest is $3,257.40. (Declaration of Irvin Garcia ["Garcia Decl."]

11   ¶¶ 6-9.)

12       Plaintiffs now move for final approval of the class action settlement. This motion is unopposed

13   by Defendant Nespresso USA, Inc. (collectively with Plaintiffs, the "Parties"). The principal terms of the

14   Settlement provide for the following:

15       (1)    Conditional certification of a Settlement Class defined as: All persons employed in

16              California by Defendant as non-exempt employees at any time during the period from

17              June 3, 2016 through January 4, 2022 ("Class Members").

18       (2)    A **non-reversionary** Gross Settlement Amount of $950,000. The Gross Settlement

19              Amount includes:

20              (a)    A Net Settlement Fund (the Gross Settlement Amount minus the requested

21                     Attorneys' Fees and Costs, Settlement Administration Costs, the $80,000

22                     PAGA settlement, and the Class Representative Enhancement Payments),

23                     which will be allocated to all Class Members on a pro-rata basis according to the

24                     number of weeks each Class Member worked during the Class Period. **The**

25                     **Entire Net Settlement Fund will be paid to all Class Members who did not**

26                     **opt out of the Settlement Class.**

27

28
_____

[1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement.

(b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or $316,667), and litigation costs and expenses of $24,085.88, to Capstone Law APC and Shegerian & Associates, Inc. ("Plaintiffs' Counsel").

(c)    Settlement administration costs of $10,000, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc. ("CPT").

(d)    A $80,000 PAGA settlement, of which 75% ($60,000) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% ($20,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons employed in California by Defendant as non-exempt employees at any time during the period from March 6, 2019 through January 4, 2022. **The Entire PAGA Fund will be paid to all PAGA Members.**

(e)    Class Representative Enhancement Payments of $5,000, each, to Omar Zine and William Baber for their service on behalf of the Settlement Class, and General Release Payments of $5,000, each, for general releases of all claims arising out of their employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Jeffrey Krivis, Esq., an experienced and respected mediator of wage and hour actions, and the Settlement confers substantial benefits to Class Members. This relief—averaging $837.67 per Class Member from the Net Settlement Fund—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiffs prevailing at trial but losing on appeal.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement, Plaintiffs respectfully request that the Court: (1) grant this Motion for Final Approval of the Settlement Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment

1  pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

2  **II.      FACTS AND PROCEDURE**

3       **A.      Brief Overview of the Litigation**

4       Nespresso is a Delaware corporation that produces and distributes some of the world's most

5  well-known food brands, including Nescafe, Gerber, and Carnation. Nespresso operates at least nine

6  retail locations in California in which it sells its coffee makers and related merchandise.

7       Plaintiff Zine worked for Nespresso in California as an hourly paid, non-exempt Specialist

8  Boutique Coffee from approximately December 2015 to February 2019. (*See* Dkt. No. 24, Second

9  Amended Complaint ["SAC"] ¶ 4.) His primary job duties included performing product demonstrations,

10  providing customer service, opening and closing the store, and stocking merchandise. (*Id.*)

11       Plaintiff Baber worked for Nespresso in California as an hourly-paid, non-exempt retail sales

12  specialist from approximately August 20, 2017 through approximately January 31, 2020. (Declaration of

13  Cheryl A. Kenner ["Kenner Decl."] ¶ 3.) His job duties included stocking merchandise; selling

14  merchandise; inventorying, organizing, packing and unpacking merchandise; cashiering; answering

15  phones; assisting customers; janitorial tasks for the store and restrooms; providing food and drinks to

16  customers; washing dishes; setting up deliveries of merchandise to customers; fulfilling orders to be

17  shipped to customers who placed orders online or else picked up in-store; and performing general

18  opening/closing duties.

19       On June 25, 2020, Plaintiff Zine filed his class action complaint against Nespresso in Contra

20  Costa County (Case No. C20-01185). (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) On July 27, 2020,

21  Defendant removed this case to the Northern District of California. (*Id.*) Plaintiff Zine's operative SAC

22  alleges that Defendant failed to pay overtime, minimum wages, provide compliant meal periods and rest

23  periods, provide compliant wage statements, provide timely wages upon termination, failure to pay

24  vested vacation time and paid time off upon termination, and unreimbursed business expenses. (*Id.*)

25       On June 3, 2020, Plaintiff William Baber filed his own class action and PAGA Representative

26  action complaint alleging the same or substantially overlapping causes of action with a similar class

27  definition as the Zine case. (Kenner Decl. ¶ 4.) On September 15, 2020, Plaintiff Baber filed his First

28  Amended Complaint. (*Id.*) On January 7, 2021, Plaintiff Baber transferred his case from the Central

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

District of California to consolidate it with Plaintiff Zine's action. (*Id.* at ¶ 5.)

**B.     The Parties Settled at Mediation.**

On October 4, 2021, the Parties participated in a mediation with Jeffrey Krivis, Esq., an experienced mediator of wage and hour class actions. (Perez Decl. ¶ 3.) Mr. Krivis helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr. Krivis's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiffs' claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the Joint Stipulation of Class Action and PAGA Settlement and Release. (*Id.*) At all times, the Parties' negotiations were adversarial and non-collusive. (*Id.*) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

**C.     Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness.**

Plaintiffs' Counsel's evaluation of the settlement's reasonableness was informed by their thorough investigation into Plaintiffs' claims and Defendant's defenses, and their review of the considerable discovery produced by Defendant during the matter's pendency. (Perez Decl. ¶ 4; Kenner Decl. ¶ 10.)

Prior to filing their respective actions, Plaintiffs contacted Plaintiffs' Counsel to discuss the factual bases for pursuing their actions against Defendant for Labor Code violations. (Perez Decl. ¶ 5; Kenner Decl. ¶ 10.) Plaintiffs were intimately familiar with Defendant's labor policies and practices, and over the course of multiple interviews, knowledgeably summarized those policies and practices to Plaintiffs' Counsel. (Perez Decl. ¶ 5; Kenner Decl. ¶ 6.) During those conversations, they explained how the policies and practices were instituted and provided valuable insight into how they gave rise to the alleged Labor Code violations. (Perez Decl. ¶ 5; Kenner Decl. ¶ 6.) Based on these interviews with Plaintiffs, Plaintiffs' Counsel determined that there were legally sufficient grounds for pursuing an action against Defendant. (Perez Decl. ¶ 5; Kenner Decl. ¶¶ 6–7,10.)

In preparation for drafting the Complaints, Plaintiffs' Counsel conducted their own preliminary investigation into the factual bases for Plaintiffs' claims, which entailed, *inter alia*, a careful examination of Plaintiffs' personnel files and associated records. (Perez Decl. ¶ 6; Kenner Decl. ¶ 10.) Following the

1    filing of Plaintiffs' respective actions, and in response to their formal and informal discovery requests,

2    Plaintiffs' Counsel received a considerable amount of documents and data, including employee

3    demographic data, putative class members' contact information, a sample of time and pay records, and

4    Defendant's labor policies and procedures manuals which covered a broad range of topics including,

5    *inter alia*, employee clock-in policies and procedures, attendance policies, meal periods/rest periods,

6    overtime & premium pay, etc. (Perez Decl. ¶ 6; Kenner Decl. ¶ 11.) The document and data exchanges

7    allowed Plaintiffs' Counsel to fully assess the nature and magnitude of the claims being settled, as well

8    as the impediments to recovery, and ultimately enabled Plaintiffs' Counsel so as to make an independent

9    assessment of the reasonableness of the settlement's terms. (Perez Decl. ¶ 6; Kenner Decl. ¶ 12.)

10    Following the production of the Class Members' contact information, Plaintiffs' Counsel also

11    interviewed numerous Class Members to determine the extent and frequency of the alleged Labor Code

12    violations and to learn more about the day-to-day circumstances giving rise to the alleged violations.

13    (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.) These Class Members worked in both stand-alone Nespresso

14    boutiques, and Bloomingdales locations during the entire class period from 2017 through 2021. (Perez

15    Decl. ¶ 7; Kenner Decl. ¶ 13.) Geographically, these Class Members worked in all relevant regions; i.e.,

16    Northern and Southern California. (Perez Decl. ¶ 7; Kenner Decl. ¶ 13.) The Class Members interviewed

17    held the following positions: greeter, sales associate, coffee specialist, barista, boutique specialist,

18    manager in-training, in-house trainer, team lead, shift lead, assistant manager, and chef. (Perez Decl. ¶ 7;

19    Kenner Decl. ¶ 13.)

20    In summary, Plaintiffs' Counsel performed a thorough investigation into the claims at issue,

21    which included: (1) determining Plaintiffs' suitability as private attorneys general and class

22    representatives through interviews, background investigations, and analyses of their employment files

23    and related records; (2) evaluating all of Plaintiffs' potential representative claims; (3) researching similar

24    wage and hour class actions as to the claims brought, the nature of the positions, and the type of

25    employer; (4) analyzing a sample of employees' time and wage records; (5) reviewing Defendant's labor

26    policies and procedures manuals; (6) interviewing Class Members; (7) researching settlements in similar

27    cases; (8) evaluating Plaintiffs' claims and estimating Defendant's liability for purposes of settlement;

28    (9) drafting the mediation brief; and (10) participating in the mediation. (Perez Decl. ¶ 8; Kenner Decl. ¶

1  10.)

2          By engaging in such a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs'

3  Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

4  Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

5  known facts and circumstances, including the risk of significant delay and uncertainty associated with

6  litigation, and various defenses asserted by Defendant. (Perez Decl. ¶ 9; Kenner Decl. ¶ 14.)

7          **D.      The Proposed Settlement Fully Resolves Plaintiffs' Claims.**

8                  **1.      Composition of the Settlement Class**

9          The proposed Settlement Class consists of all persons employed in California by Defendant as

10  non-exempt employees at any time during the period from June 3, 2016 through January 4, 2022.

11  (Settlement Agreement ¶ 5.)

12                  **2.      Settlement Consideration**

13          Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for the

14  Gross Settlement Amount of $950,000. The Gross Settlement Amount includes: (1) automatic payments

15  to all Participating Class Members—meaning, all Class Members except those who submit timely and

16  valid Requests for Exclusion—from the Net Settlement Fund; (2) $316,667 in attorneys' fees (i.e., one-

17  third of the common fund) and $24,085.88 in litigation costs to Plaintiffs' Counsel; (3) Settlement

18  Administration Costs of $10,000; (4) a $60,000 payment to the LWDA and a $20,000 payment to

19  PAGA Members; and (5) Class Representative Enhancement Payments of $5,000, each, for Plaintiffs'

20  service on behalf of the Settlement Class, and General Release Payments of $5,000, each, for general

21  releases of all claims arising out of their employment with Defendant. (Settlement Agreement ¶¶ 34-39.)

22          Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, the

23  payment to the LWDA, and the Class Representative Enhancement Payments, the Net Settlement Fund

24  will be distributed to Participating Class Members in full. (Settlement Agreement ¶ 40.)

25                  **3.      Formula for Calculating Payments from the Net Settlement Fund**

26          Each Class Member's share of the Net Settlement Fund will be proportional to the number of

27  weeks he or she worked during the Class Period. (Settlement Agreement ¶ 42.)

28

**4.      Formula for Calculating Payments from the PAGA Fund**

Each PAGA Member's share of the PAGA Fund will be proportional to the number of weeks he or she worked during the PAGA Period. (Settlement Agreement ¶ 42(b).)

**5.      Releases by Class Members and PAGA Members**

In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class Members will agree to release the Released Class Claims during the Class Period:

> All claims asserted in the Actions, reasonably arising from or related to the facts and claims alleged in the Actions, or that reasonably could have been raised in the Actions based on the facts and claims alleged in the operative civil complaints for each Action and all amendments thereto, including all claims for unpaid wages, minimum wage, overtime compensation, double-time compensation, and interest; the calculation of the regular rate of pay for overtime or for any purpose; meal period and rest-period premiums, including failure to pay premiums at the regular rate of compensation; reimbursement for all necessary business expenses; payment for all time spent in connection with security checks and all hours worked, including off-the-clock and unrecorded work; failure to pay vacation and paid time off upon termination; failure to provide accurate and timely wage statements; unfair business practices; penalties, including, but not limited to, civil penalties, statutory penalties, recordkeeping penalties, and waiting-time penalties; and attorneys' fees and costs; all claims related to the Released Claims arising under: the California Labor Code (including, but not limited to, sections 200, 201, 202, 203, 204, 210, 218.5, 226, 226.3, 226.7, 227.3, 500, 510, 512, 516, 558, 558.1, 1174, 1174.5, 1182.12, 1185, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2800, and 2802), the Wage Orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200, et seq. This release excludes the release of claims not permitted by law.

(Settlement Agreement ¶¶ 26, 55.)

And in exchange for the PAGA Settlement Amount, Plaintiffs and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period:

> All claims asserted through California Labor Code §§ 2698, et seq., that reasonably arise out of, or are related to, the Released Class Claims during the PAGA Period.

(Settlement Agreement ¶¶ 27, 56.)

**E.      The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order.**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services. (Garcia Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order, will include: (1) printing and mailing the Notice of

1  Class Action Settlement ("Notice"); (2) receiving and processing undeliverable Notices and locating

2  updated addresses for Class Members; (3) receiving and validating Requests for Exclusion; (4)

3  calculating and distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary

4  reports and declarations; and (7) performing such other tasks as set forth in the Settlement Agreement or

5  as the Parties mutually agree or that the Court orders. (*Id.*)

6  On December 12, 2022, CPT received the Class Notice prepared jointly by Plaintiffs' Counsel

7  and counsel for Defendant and approved by the Court. (Garcia Decl. ¶ 3.) The Class Notice summarized

8  the Settlement's principal terms, provided Class Members with an estimate of how much they would be

9  paid if the Settlement received final approval, and advised Class Members about how to opt out of the

10  Settlement and how to object. (*Id.*)

11  Separately, counsel for Defendant provided CPT with a mailing list (the "Class List"), which

12  included each Class Member's full name, last known address, Social Security Numbers, and information

13  necessary to calculate payments. (Garcia Decl. ¶ 3.) The mailing addresses contained in the Class List

14  were processed and updated using the National Change of Address Database maintained by the U.S.

15  Postal Service. (*Id.* at ¶ 4.) On January 23, 2023, CPT mailed Class Notices to Class Members via First-

16  Class U.S. mail. (*Id.*) Class Members were given 45 days to opt out or object to the Settlement. Plaintiffs

17  can now report that no Class Members opted out, and no Class Members have objected to the

18  Settlement. (*Id.* at ¶¶ 6-7.)

19  **III.    ARGUMENT**

20  **A.    Class Certification Requirements Are Met.**

21  The Court certified the Class for settlement purposes upon Preliminary Approval, finding that

22  requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt. No. 60.) Nothing has changed

23  that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F.

24  Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order

25  "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ.*

26  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification

27  "differently in litigation classes and settlement classes"). Therefore, the Court should grant final

28  certification of the Settlement Class.

1    **B.    The Court Should Grant Final Approval of the Class Settlement.**

2        Upon final approval, the Court's duty is to determine whether the proposed Settlement is

3    "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

4    1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal

5    courts favor settlements, particularly in class actions, where the costs, delays and risks of continued

6    litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class*

7    *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors

8    settlements, particularly where complex class action litigation is concerned"). Second, for settlements

9    reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's
> intrusion upon what is otherwise a private consensual agreement negotiated between
> the parties to a lawsuit must be limited to the extent necessary to reach a reasoned
> judgment that the agreement is not the product of fraud or overreaching by, or collusion
> between, the negotiating parties, and that the settlement, taken as a whole, is fair,
> reasonable and adequate to all concerned.

14    *Hanlon*, 150 F.3d at 1027.

15        Guided by these policies, the district court then may consider some or all of the following factors

16    in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk,

17    expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action

18    status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and

19    the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views

20    of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

21        The amendments to Rule 23 direct the Court to consider a similar list of factors, including

22    whether: (A) the class representatives and class counsel have adequately represented the class; (B) the

23    proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into

24    account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

25    distributing relief to the class, including the method of processing class-member claims; (iii) the terms of

26    any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to

27    be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each

28    other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not

1  "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of

2  procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme*

3  *Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting

4  FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

5  Additionally, for class action settlements prior to contested certification, the Ninth Circuit further

6  requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth*

7  factors.[2] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement

8  satisfies all of these factors, meriting final approval.

9              **1.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel.**

10  The Settlement is the result of the Parties' protracted and adversarial settlement negotiations by

11  experienced class action attorneys. Plaintiffs are represented by Capstone Law APC and Shegerian &

12  Associates, Inc. Plaintiffs' Counsel employ seasoned class action attorneys who regularly litigate wage

13  and hour claims through certification and on the merits, and have considerable experience settling wage

14  and hour class actions. (Perez Decl. ¶¶ 10-18, Ex. 1; Kenner Decl. ¶¶ 16–20, 22–24.) Defendant is

15  represented by Sheppard, Mullin, Richter & Hampton LLP, a respected defense firm.

16              **2.    The Extent of Discovery Completed Supports Final Approval.**

17  As set forth in greater detail above, based on their analysis of documents and class data produced

18  by Defendant (including a sample of Class Members' time and pay records, and Nespresso's labor

19  policies and procedures manuals), Plaintiffs' Counsel were able to realistically assess the value of

20  Plaintiffs' claims and intelligently engage defense counsel in settlement discussions that culminated in

21  the proposed settlement now before the Court. (Perez Decl.¶¶ 4-8; Kenner Decl. ¶ 12.)

22  By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel

23  can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

24  Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

25  known facts and circumstances, including the risk of significant delay and uncertainty associated with

26  litigation, various defenses asserted by Defendant. (Perez Decl.¶ 9; Kenner Decl. ¶ 12.)

27

28

---

[2] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

**3.    The Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration of Further Litigation.**

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class's behalf—a $950,000 non-reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's-length before an experienced mediator, and the settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[3]

| Defendant's Exposure for the Class Claims | |
|---|---|
| Off-the-Clock Claim | $550,000.00 |

---

[3] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

1

| Defendant's Exposure for the Class Claims | |
|---|---|
| Meal Period Claim | $336,000.00 |
| Rest Period Claim | $3,170,000.00 |
| Regular Rate Claim | $50,000.00 |
| Business Expense Claim | $225,000.00 |
| Wage Statement Claim | $1,112,000.00 |
| Final Pay Claim | $1,161,800.00 |
| **Total** | **$6,604,800.00** |

These estimates assume that each and every one of Plaintiffs' claims would have been certified for class-wide resolution, that Plaintiffs would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonable, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiffs' Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendants' maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiffs' claims; (ii) the risk of class certification being denied; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiffs' claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

After taking into account the Discount Factors, Plaintiffs' Counsel determined that it would be reasonable to settle for a fraction of Defendants' maximum potential exposure for the class claims (PAGA discussed in the following section), or approximately 15 percent. Such a discount is inherently reasonable given that Plaintiffs would have had to overcome **multiple, dependent** contingencies to prevail on his claims. If anything, the projected odds for each of the above contingencies is generous to the class's position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these dispositive stages.

Courts routinely approve settlements that provide a similar discounted range of the maximum

1  potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del.

2  2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated

3  damages); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements

4  with a value of 1% to 8% of the estimated total damages were approved); *In re Four Seasons Secs. Laws*

5  *Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy*

6  *Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which

7  amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the

8  strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs.,*

9  *Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated

10 damages).[4]

11 **4.    The Settlement Class Has Responded Positively to the Settlement.**

12        In evaluating the fairness of a Settlement, the "absence of a large number of objections to a

13 proposed class action settlement raises a strong presumption that the terms of a proposed class settlement

14 action are favorable to the class members." *National Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D.

15 523, 529 (C.D. Cal. 2004). Here, no Class Members have opted out or objected to the Settlement.

16 (Garcia Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly positive," supporting approval of the

17 Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for

18 the settlement where 80 out of 5,454 class members elected to opt out and nine class members objected);

19 *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and

20

21 _____

        [4] *See also In re Uber FCRA Litig*., No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552, at
22 *23- 24 (N.D. Cal. June 29, 2017) (granting preliminary approval to class action settlement where gross
   settlement fund, prior to deducting attorneys' fees and services awards, was valued at 7.5% or less of
23 total possible verdict); *Viceral v. Mistras Grp., Inc*., No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS
   140759, at *21 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval to class action settlement
24 representing "8.1% of the full verdict value" with net settlement amount representing approximately
   5.3% of full verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL
25 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to settlement with net recovery to
   Plaintiffs valued at 7.3% of potential maximum recovery); *Cruz v. Sky Chefs, Inc*., No. 12-cv-02705-
26 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (granting final approval where gross
   settlement amount represented 8.6% of the maximum potential recovery from the class claims and
27 estimated amount distributable to class after accounting for attorneys' fees and other deductions
   represented approximately 6.1% of maximum potential recovery); *In re LDK Solar Sec. Litig.*, No. 07-
28 cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approving where
   "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee
   and costs—even before any reduction thereof for attorney's fees and costs.").

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
3:20-cv-05144-SK

1    16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm*

2    *Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010)

3    (finding an opt-out rate of 0.4% supported settlement). In other words, "[t]he fact that the overwhelming

4    majority of the class willingly approved the offer and stayed in the class presents at least some objective

5    positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

6        The average settlement payment from the Net Settlement Fund is $837.67 and the highest is

7    $3,257.40. (Garcia Decl. ¶ 9.) This average net recovery is significantly greater than many other wage

8    and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Sandoval v.*

9    *Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery

10   of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average

11   net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A.

12   County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department*

13   *Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90);

14   *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal.) (average net recovery of

15   approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.)

16   (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213

17   (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon,*

18   *Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Jones v. Bath*

19   *& Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal.) (average net recovery of approximately

20   $50); and *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.)

21   (average net recovery of approximately $80).

22        **C.    The Court Should Approve the PAGA Settlement.**

23        Pursuant to the Settlement Agreement, $80,000 from the Gross Settlement Amount shall be

24   allocated to the resolution of the PAGA claim, of which 75% ($60,000) will be paid directly to the

25   LWDA, and the remaining 25% ($20,000) will be paid to Participating Class Members. (Settlement

26   Agreement ¶ 39.)

27        This result was reached after good-faith negotiation between the parties. The amount was valued

28   as follows: Based on information and evidence produced by Defendant during discovery, Plaintiffs

1    determined that aggrieved employees worked a combined total of approximately 20,000 pay periods

2    during the PAGA statute of limitations period ("PAGA Period"). Unless otherwise provided by the

3    Labor Code,[5] PAGA civil penalties for Labor Code violations are calculated according to Labor Code

4    2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil

5    penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for each

6    aggrieved employee per pay period for each subsequent violation (the "subsequent violation penalty").

7        However, a number of courts have found that the "subsequent" penalty under PAGA applies

8    only after a <u>court</u> or the Labor Commissioner determines that the employer has violated the Labor Code.

9    *See Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 356 (2021) ("the increased $200 civil penalty

10   for 'subsequent violation[s]' does not apply unless [Plaintiff] presents evidence that the Labor

11   Commission or a court notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v.*

12   *Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil

13   penalties" because the defendant was not given notice by the Labor Commissioner when the

14   "subsequent" violations occurred).[6] Under this line of cases, Defendant's exposure would be

15   approximately $2 million = 20,000 violative pay periods × $100.

16       It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil

17

18

19       [5] For example, Labor Code section 558 authorizes the Labor Commissioner to seek civil
     penalties for overtime and other workday violations at an initial violation rate of $50 for each underpaid
20   employee for each pay period and a subsequent violation rate of $100 for each underpaid employee for
     each pay period. *See* Lab. Code § 558; *see also ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 197 (2019)
21   (calculating PAGA penalties for overtime violations according to the Section 558 penalty rates); *Lawson*
     *v. ZB, N.A.*, 18 Cal. App. 5th 705, 724 (2017), as modified (Dec. 21, 2017), aff'd but criticized sub nom.
22   *ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175 (2019) ("we note that with respect to the meal break and rest break
     violations . . . section 558 provides either a $50 or $100 assessment for each violation during a pay
     period").
23       [6] *See also Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998, at *5
24   (C.D. Cal. June 10, 2019) ("employers are not subject to heightened penalties . . . until a court or
     commissioner notifies the employer that it is in violation of the Labor Code . . . [Plaintiff] has not offered
25   evidence that the Labor Commission or a court has notified them of PAGA violations [thus] PAGA's
     heightened penalty of $200 for subsequent violations will not be calculated to determine the amount in
26   controversy"); *Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014
     WL 4961182 (C.D. Cal., October 2, 2014) ("Under the Labor Code, if an employer does not have notice
     that they are committing a violation, they are not subject to the heightened penalties."); *Trang v. Turbine*
27   *Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal.
     Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent
28   violations unless and until a court or commissioner notifies the employer that it is in violation of the
     Labor Code"), citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008).

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
3:20-cv-05144-SK

penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000— **or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous other PAGA claims).

Plaintiffs therefore determined an appropriate range of settlement for PAGA penalties as a percentage of the settlement range that was consistent with other hybrid class/PAGA settlements approved by California courts.[7] Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

**D.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval.**

Plaintiffs request final approval of settlement administration costs in the amount of $10,000. (Garcia Decl. ¶ 10.) CPT has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Garcia Decl.) Accordingly, the $10,000 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

**IV.    CONCLUSION**

The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not

---

[7] *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at *3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 at *7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000, of which approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiffs and their counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable. Accordingly, Plaintiffs respectfully request that this Court grant final approval of the Settlement Agreement and enter judgment.

Dated: April 4, 2023                    Respectfully submitted,

By:  /s/ Raul Perez
                                        Raul Perez
                                        Mark A. Ozzello
                                        Joseph Hakakian
                                        **CAPSTONE LAW APC**

                                        Carney R. Shegerian
                                        Anthony Nguyen
                                        Cheryl A. Kenner
                                        **SHEGERIAN & ASSOCIATES, INC.**

                                        Attorneys for Plaintiffs Omar Zine and William Baber